THE STATE OF OHIO, APPELLEE, *v.* STAPLETON, APPELLANT.

(No. 1-74-29—Decided November 14, 1974.)

220

*Mr. Lawrence S. Huffman,* prosecuting attorney, and *Mr. Gary R. Herman,* for appellee.
*Mr. William H. White,* for appellant.

GUERNSEY, P. J. Defendant, Charles Stapleton, having been convicted of the crime of rape, was confined in Lima State Hospital as a psychopathic offender under the provisions of R. C. 2947.25. While so confined he fled that institution on September 21, 1971. On October 22, 1971, he was indicted by the Allen County grand jury charged with an escape in violation of R. C. 2901.11.

Meanwhile, on or about September 28, 1971, he was arrested in Cuyahoga County and held there for an offense unrelated to the indictment in Allen County. On July 17, 1972, and again on September 15, 1972, defendant while still in Cuyahoga County filed motions to dismiss the Allen County indictment because he had not had a speedy trial. The first of these motions was overruled by journal entry on July 21, 1972, and the second was overruled in open court on August 8, 1973. On March 19, 1973, the defendant was released from the jurisdiction of the Cuyahoga County Common Pleas Court and on that date the Allen County indictment was first served upon the defendant.

On April 3, 1973, counsel was first appointed for defendant. On April 6, 1973, a motion was filed to quash the indictment as not stating a crime and for want of a speedy trial, and on April 13, 1973, was overruled. When arraigned on April 10, 1973, defendant entered oral pleas of not guilty and not guilty by reason of insanity. It does not appear when the act of assignment occurred, but trial was thereafter set for August 8, 1973. Defendant did not go to trial on that date for it was then discovered that he had not submitted a written plea of not guilty by reason of insanity. He also on that date sought again in open court to have the case dismissed for want of a speedy trial. Upon a written plea of not guilty by reason of insanity being submitted on August 8, 1973, the court on August 23, 1973, ordered defendant committed to the Lima State Hospital for pre-trial observation.

The record is not certain as to what then transpired

but it may be inferred from defendant's exhibit 4 in evidence that the authorities at the Lima State Hospital had concluded that defendant had recovered sufficiently from the mental condition from which he was suffering when first committed to Lima State Hospital under the provisions of R. C. 2947.25 *et seq.*, that under such provisions they sought on July 27, 1973, approval to have his commitment terminated and defendant returned to the Ohio State Penitentiary to serve time on his sentence for rape. This transfer was approved and occurred sometime in August of 1973. In any event on December 5, 1973, the trial judge issued a warrant to remove the defendant from the Ohio State Penitentiary to Allen County for trial.

On February 13, 1974, the defendant went to jury trial on the escape indictment. Defendant again unsuccessfully moved for dismissal for want of a speedy trial and because the indictment failed to charge a crime. A verdict of guilty was returned upon which he was sentenced. It is from this judgment of conviction and sentence that the defendant appeals assigning as error (1) that "escape" from Lima State Hospital is not a crime prohibited by R. C. 2901.11, (2) that defendant was not afforded a speedy trial as provided by state and federal law, (3) that the indictment was improperly obtained, there having been no preliminary hearing, (4) that the standard as to proof of sanity was improperly applied by the trial court, and (5) that the verdict is against the manifest weight of the evidence.

Defendant's claim under the first assignment of error is that Lima State Hospital is an institution under the Department of Mental Hygiene as opposed to the Department of Corrections, and is not a penitentiary, workhouse, or jail, and that the character of defendant's confinement is, in essence, that of a patient and not a prisoner.

R. C. 2901.11, under which the defendant was charged and convicted, prescribes:

"* * * No person shall escape * * * from any confinement or restraint imposed as a result of a criminal, contempt, or probate proceeding * * *."

This form of the statute is the result of an amendment

to R. C. 2901.11 occurring in 1953 (125 v 222). The act by which it was amended also amended R. C. 2917.14, entitled under the act, "Conveying articles into places of confinement to aid in escape," to read (with the amended words emphasized):

"Sec. 2917.14 (12835). No person shall convey or attempt to convey into the penitentiary, * * * *a state reformatory, a state hospital, county jail, workhouse, or city jail,* anything to effect the escape of a prisoner, *or inmate* lawfully detained therein * * *."

Prior to the quoted 1953 amendment R. C. 2901.11 and G. C. 12408, the predecessor to R. C. 2901.11, had reference only to "convicts" or "prisoners" and escape from the custody of "guards", "officers", and from "stockades", "jails", and "places of imprisonment." See 98 v 180, Sec. 7.

It becomes obvious from this legislative history that the General Assembly sought to broaden the scope of its "escape" statute and intended by the amendment of R. C. 2901.11 to include state hospitals as places of confinement and to prohibit the escape therefrom of any inmate there confined as a result of a criminal proceeding. The proceeding under R. C. 2947.25, the statute which constitutes the basis of defendant's confinement in the Lima State Hospital is merely an extension of the criminal proceeding in which defendant was found guilty of rape and prescribes the procedure for sentencing a person so convicted.

We find the defendant's first assignment without merit.

The right of speedy trial in state prosecutions originates in the Sixth Amendment to the Constitution of the United States applied to state criminal cases by virtue of the Fourteenth Amendment and in Article 1, Sec. 10 of the Ohio Constitution. *State* v. *Meeker,* 26 Ohio St. 2d 9. These constitutional provisions have also been supplemented by Ohio statutory provisions and by court rule although the right exists independently of statute or rule. See, for example, R. C. 2945.71, R. C. 2941.401, and Rule VIII, Supreme Court Rules of Superintendence.

In *Smith* v. *Hooey,* 393 U. S. 374, 89 S. Ct. 575, the Supreme Court of the United States rejected the view that a man already confined under a lawful sentence is hardly in

a position to suffer from the delay of trial of another charge. It was noted (1) that the possibility of his receiving a sentence on the second charge concurring with the one on which he was already confined would be forever lost if trial of the pending charge was postponed until his confinement on the first was terminated, (2) that under procedures widely practiced, the duration of his imprisonment might be increased, and the conditions under which he would serve his sentence greatly worsened by the pendency of another criminal charge outstanding against him (for instance, he might be denied parole for such reason), (3) that an outstanding untried charge could have fully as depressive an effect upon a prisoner as upon a person who was at large, and (4) the long delay would impair the ability of the accused to defend himself because remoteness of the place of his incarceration from the place of the alleged crime would adversely affect his ability to confer with potential defense witnesses or even to keep track of their whereabouts.

In *State* v. *Meeker, supra* at 16, Justice Leach of the Ohio Supreme Court said, ''Considering the basic purposes of the constitutional right to a 'speedy trial,' we conclude that such constitutional guarantees are applicable to unjustifiable delays in commencing prosecution as well as to unjustifiable delays after indictment.'' He reiterated the holding of *Partsch* v. *Haskins*, 175 Ohio St. 139, that the right to a speedy trial is not self-executing, or ''intended as a shield to the guilty, the protection of which might be invoked by sitting silently back and allowing the prosecution to believe that the accused is acquiescing in the delay,'' but ''is a right which must be claimed or it will be held to have been waived.''

In *State, ex rel. Hodges,* v. *Coller,* 19 Ohio St. 2d 164, the Supreme Court said:

''The question is whether under the circumstances of this case he has been denied a speedy trial. The fact that he was in jail in another county for trial on a different charge does not affect his right to a speedy trial on this charge.

'' 'The right to a speedy trial is often said to be a rel-

ative one to be judged by all the surrounding circumstances.' Modern Constitutions Law, Antieau, 336, Section 5:50.''

Examining the facts of this case in the light of these principles of law we find:

(1) Defendant was indicted on October 22, 1971, but the indictment was not served upon him until March 19, 1973, approximately 17 months later. It appears that from a date about three weeks before the indictment defendant was in custody, and known to be in custody, in Cuyahoga County. He could have been served with the indictment there. The failure of service of the indictment until March 19, 1973, unduly postponed the appointment of counsel to assist in his defense and of course postponed arraignment and trial at least as long.

(2) Defendant could have been returned for trial prior to March 19, 1973. As was stated by the Supreme Court in *State, ex rel. Hodges,* v. *Coller, supra,* the fact that defendant was in jail in another county for trial on a different charge does not affect his right to a speedy trial on this charge. The record is somewhat silent as to what transpired in Cuyahoga County during the interval from the return of the indictment in Allen County to defendant's return to Allen County. R. C. 2941.40 permits removal of a convict to the county in which an indictment is pending for trial. R. C. 2941.45 permits removal of a person serving a jail sentence for arraignment and trial.

(3) Following the delay for the period from October 22, 1971, to April 10, 1973, the date of defendant's arraignment, trial was not scheduled until August 8, 1973, some four months later. This delay is not explained and, although on August 8, 1973, trial had to be deferred because of the discovery at that time of the failure of the defendant to file a written plea of not guilty by reason of insanity and the necessity, by reason of such plea, to commit him to the Lima State Hospital for observation, the delay from April 10, 1973, to August 8, 1973, did not occur by reason of such failure and is not attributable to defendant.

(4) Following the 30 day observation period (not or-

dered by journal entry until August 23, 1973) defendant then seems to have become "lost" insofar as prosecution on the indictment was concerned. The order of August 23, 1973, orders examination by Drs. Kalb, Reshetylo and Croissant and recites present incarceration in the Lima State Hospital. Defendant's Exhibit 4, however, indicates that on or about August 21, 1973, the Ohio Department of Mental Health and Retardation authorized the termination of defendant's commitment to the Lima State Hospital under R. C. 2947.25 and directed his transfer, effective August 9, 1973, to the Ohio State Reformatory to serve the sentence arising from the conviction for rape which conviction originally brought about defendant's commitment to Lima State Hospital. It then appears that no action was taken by the Court of Common Pleas of Allen County to bring the defendant to trial until December of 1973 when warrants were issued for his removal to Allen County for trial. It does not appear from the record when he was removed for trial but it does appear that trial was not commenced until February 12, 1974.

(5) From the period beginning with defendant's indictment and ending with his trial the only delay chargeable to defendant was that occasioned by his failure to file in writing his plea of not guilty by reason of insanity.

(6) On at least five separate occasions, specifically July 17, 1972, September 5, 1972, April 6, 1973, August 8, 1973, and February 12, 1974, the defendant by himself or by counsel filed written motions or made oral motions to dismiss the proceedings against him or quash the indictment because of the denial of speedy trial. He did not on these occasions seek to be tried but they can only reasonably be construed and must be construed as being claims of right to speedy trial and not as acquiescence in delay.

We conclude that the defendant did not waive any of his rights, nor cause or acquiesce in any delay except that occasioned by his failure to file a written plea of not guilty by reason of insanity which resulted in the court not proceeding to trial on August 8, 1973. In these circumstances the delay of trial from his indictment on October 22, 1971,

to his trial on February 13, 1974, was unexcused, unexcusable and excessive, depriving him of his rights under both the Constitution of the United States and the Constitution of Ohio.

Appellant's third assignment of error is based on a claim that he was denied a constitutional right by being indicted for escape without first having had a preliminary hearing on such charge. Although, as set forth by appellant, the United States Supreme Court has said in *Coleman* v. *Alabama,* 399 U. S. 1, that a preliminary hearing is a critical stage in the criminal process, this was said with respect to the right of counsel and not to the right of a preliminary hearing per se. In Ohio there exists no constitutional right to a preliminary hearing and it is settled by Ohio Supreme Court decisions that an indictment is valid without one. *State* v. *Minamyer,* 12 Ohio St. 2d 67, and *State, ex rel. Haynes,* v. *Powers,* 20 Ohio St. 2d 46.

The fourth assignment of error is based on appellant's theory that by reason of his commitment to Lima State Hospital under the provisions of R. C. 2947.25 he was presumed to be insane at the time of his escape and did not, therefore, have to prove his insanity at that time. Appellant was committed, however, as a psychopathic offender, which is defined by R. C. 2947.24(B) as being "any person who is adjudged to have a psychopathic personality, who exhibits criminal tendencies, and who by reason thereof is a menace to the public." The statute then goes on to say, "Psychopathic personality is evidenced by such traits or characteristics inconsistent with the age of such person, as emotional immaturity and instability, impulsive, irresponsive, reckless, and unruly acts, excessively self-centered attitudes, deficient powers of self-discipline, lack of normal capacity to learn from experience, marked deficiency of moral sense or control."

Obviously, a psychopathic offender, as so defined, may be mentally ill in the legal sense but not legally insane in the character, manner and degree required to absolve him from responsibility for acts which would otherwise be criminal. Such legal insanity is that set forth by the

Supreme Court in the case of *State* v. *Staten,* 18 Ohio St. 2d 13, where it held:

"1. One accused of criminal conduct is not responsible for such criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he does not have the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law."

Thus, prior to the act of escape the defendant had not been held by the courts to be legally insane and no presumption thereof existed at such time.

We have examined the trial court's charge to the jury as it relates to the defense of not guilty by reason of insanity and we find no error in that respect.

As to defendant's final claim that the verdict was against the weight of the evidence we have thoroughly reviewed the evidentiary record and find that there is sufficient evidence of probative value to support the verdict. Indeed, in the opening statement which the defendant, at his request, was permitted to make to the jury the defendant (Rec. 37) candidly admits that he committed the act of escape, but claimed that he "was at the time in such a mental state of mind that he could not be held criminally responsible for the alleged act in this indictment." This latter he failed to establish by a preponderance of the evidence. *State* v. *Staten, supra,* second paragraph of syllabus.

We conclude that the trial court committed prejudicial error in denying to defendant a speedy trial as guaranteed under the Constitution of the United States and the Constitution of Ohio, that for such error the judgment must be reversed and vacated and the defendant discharged from the escape charge contained in the indictment. Our judgment does not, of course, relieve him from continued confinement under his sentence for the crime of rape.

*Judgment reversed.*

Cole and Miller, JJ., concur.