[Cite as *State v. Pittman*, 2014-Ohio-5001.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,                  CASE NO.  9-13-65

      v.

ROBERT PITTMAN,                        O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Trial Court No. 09 CR 0337

**Judgment Affirmed**

Date of Decision:   November 10, 2014

APPEARANCES:

    *Brent W. Yager and Megan K. Frericks* **for Appellant**

    *Rocky Ratliff*  **for Appellee**

**ROGERS, J.**

{¶1} Plaintiff-Appellant, the State of Ohio, appeals the judgment of the Court of Common Pleas of Marion County granting Defendant-Appellant, Robert Pittman's, motion to dismiss. On appeal, the State argues that the trial court erred by improperly dismissing counts five and six of the indictment because R.C. 2929.21(B) allows for the prosecution of those who violate a court order by failing to pay child support arrearage. For the reasons that follow, we affirm the trial court's judgment.

{¶2} The parties stipulated that on November 15, 1988, the Court of Common Pleas of Marion County, Juvenile Division, ordered Pittman to pay child support for Sate and Sade Douglas beginning January 6, 1989 until the children had completed high school or were otherwise emancipated.

{¶3} On November 20, 2006, the Court of Common Pleas of Marion County, Family Division, declared Sade and Sate Douglas emancipated effective August 31, 2006, due to being 18 years old. At that time, an arrearage order in the amount of $34,313.45 was entered against Pittman for the child support he had failed to previously pay.[1]

{¶4} On January 19, 2007, a contempt motion was filed alleging that Pittman had failed to pay the child support arrears ordered in the November 20,

---

[1] In that order, Pittman was ordered to pay $236.16 per month plus a 2% processing fee towards the arrearages owed.

2006 judgment entry. On December 6, 2007, Pittman was found in contempt for failing to pay his arrearages. As a result of his contempt, Pittman was ordered to serve 30 days in jail, with 25 suspended on the condition that Pittman begin paying his child support arrears until paid in full.

{¶5} On July 9, 2009, the Marion County Grand Jury indicted Pittman on six counts of nonsupport of dependents in violation of R.C. 2919.21(B), felonies of the fourth degree (counts 1-6), and three counts of nonsupport of dependents in violation of R.C. 2919.21(B), felonies of the third degree (counts 7-9). All of the counts alleged that Pittman had previously been convicted of or pled guilty to a felony violation of R.C. 2919.21 in April of 2003. Revised Code 2919.21(B) reads, "No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support."

{¶6} After the indictment was filed, no proceedings took place in this case until almost four years later, when Pittman learned of the indictment through a background check that was completed as part of his job application. On June 11, 2013, Pittman voluntarily appeared before the court to accept service of the indictment and to be arraigned.

**{¶7}** On July 29, 2013, Pittman filed a motion to dismiss the indictment for violating his constitutional right to speedy trial due to pre-indictment and post-indictment delay. On August 19, 2013, the State filed a response.

**{¶8}** According to the record, a hearing was held on Pittman's motion to dismiss on August 20, 2013. No transcript of this hearing was produced. The trial court's judgment entry states that at the hearing, Pittman orally sought amendment of his motion to also seek dismissal of the indictment on the grounds of a violation of the statute of limitations under R.C. 2901.13.

**{¶9}** On August 26, 2013, the trial court filed its judgment entry on the matter. In its entry, the court analyzed the relevant factors as described in *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether Pittman's constitutional right to a speedy trial was violated. The trial court reasoned that the delay from the indictment to arraignment was significant, that the delay was caused by the State, that Pittman had no ability to assert a right to speedy trial because he was unaware of the indictment, that when Pittman learned of the indictment he asserted his right to a timely disposition, and that there was "likely to be some prejudice, at least with respect to the oldest charges." (Docket No. 28, p. 6-7). Thus, the trial court concluded that Pittman's "right to a speedy trial would be violated by the prosecution of the offenses alleged in Counts 1, 2, 3, 4, 7, 8, and 9, which are all

offenses which allege criminal conduct prior to July 1, 2007."[2] (*Id*. at 7). The court further found that Pittman's speedy trial rights were not violated as to Counts 5 and 6, which alleged conduct after July 1, 2007, as "some civil enforcement action [had] take[n] place in December 2007, and the likelihood of prejudice is less with respect to the more recent allegations." (*Id*.).

**{¶10}** Subsequently, on September 24, 2013, Pittman filed a second motion to dismiss the remaining counts of the indictment (counts 5 and 6), arguing that he was being prosecuted for failing to pay an "arrearage only" order, rather than failing to pay a child support order, and that such an order could not be the basis of prosecution under R.C. 2919.21(B). To support his assertion, Pittman cited the dissenting opinion in *State v. Dissinger*, 5th Dist. Delaware No. 02CA-A-02-010, 2002-Ohio-5301. In *Dissinger*, a 2-1 majority found that an "arrearage only" order could be the basis of prosecution under R.C. 2919.21(B). *Id.* at ¶ 12. However, the dissent contended that the wording of the statute seemed to preclude prosecution where there was no current legal support obligation for the children. *Id.* at ¶ 17-19.

**{¶11}** On October 16, 2013, the State filed a Bill of Particulars clarifying the allegations contained in Counts 5 and 6, which stated that "on or about July 1, 2007 through June 30, 2009, [Pittman] did fail to provide support as established by

---

[2] The court also found that Counts 1, 2, 7, 8, and 9, which alleged conduct prior to June 11, 2007, were barred by the statute of limitations.

a court order * * *[.] [Pittman] failed to provide support for a total accumulated period of 101 weeks out of 104 consecutive weeks." (Docket No. 35, p. 1). The wording is the same in the Bill of Particulars for Counts 5 and 6 except for the fact that Count 5 refers to Pittman's failure to pay his arrears to Alma Douglas for Sate Douglas, while Count 6 refers to Pittman's failure to pay his arrears for Sade Douglas. On November 4, 2013, the parties filed agreed factual stipulations so that the court could make a pre-trial ruling on whether Pittman could be prosecuted under R.C. 2919.21(B) for failing to pay an "arrearages only order." (Docket No. 37).

{¶12} On November 5, 2013, a hearing was held on Pittman's second motion to dismiss. At the hearing, the parties clarified the stipulated facts and presented the question to the court of whether R.C. 2919.21(B) criminalized failure to pay an "arrearage only" order. Nov. 5, 2013 Tr., p. 15.

{¶13} On November 14, 2013, the trial court filed its entry granting Pittman's second motion to dismiss. In the entry, the trial court agreed with the dissent in *Dissinger*. The trial court reasoned that words in a statute should "be construed according to the rules of grammar and common usage," and that offenses "shall be strictly construed against the state, and liberally construed in favor of the accused." (Docket No. 39, p. 6). The trial court found that "some meaning must be given to the phrase in R.C. 2919.21, "to another person whom …

the person <u>is</u> legally obligated to support." (Emphasis sic.) (*Id.*). The trial court read this to mean that "at the time of the commission of the criminal offense, there must be a current obligation of support." (*Id.* at 7). As Pittman's "current" obligation concluded with the children's emancipation in 2006, the trial court agreed with the dissent in *Dissinger* and granted Pittman's second motion to dismiss Counts 5 and 6 of the indictment. (*Id.*).

{¶14} It is from this judgment that the State appeals, asserting the following assignment of error for our review.

### *Assignment of Error*

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPROPERLY DISMISSED COUNTS FIVE AND SIX OF THE INDICTMENT FILED AGAINST THE DEFENDANT-APPELLEE BECAUSE O.R.C. 2919.21(B) ALLOWS FOR THE PROSECUTION OF THOSE WHO VIOLATE A COURT ORDER BY FAILING TO PAY A CHILD SUPPORT ARREARAGE.**

{¶15} In its sole assignment of error, the State argues that the trial court erred in granting Pittman's second motion to dismiss. Specifically, the State urges this court to follow the majority opinion in *Dissinger*, and reverse the trial court's ruling. We decline to do so.

{¶16} We review a trial court's dismissal of an indictment, pursuant to Crim.R. 48, under an abuse of discretion standard. *See State v. Busch,* 76 Ohio St.3d 613, 616 (1996); *State v. Bales*, 9th Dist. Lorain No. 11CA010126, 2012-

Ohio-4426, ¶ 12. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Slappey*, 3d Dist. Marion No. 9-12-58, 2013-Ohio-1939, ¶ 12.

{¶17} Pursuant to R.C. 2919.21(B), "No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support." It is undisputed that Pittman's children are emancipated and his only obligation, currently, is to pay the arrearages that have accumulated while his daughters were minors.

{¶18} "In construing statutes, we must read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Kimber v. Davis*, 10th Dist. Franklin No. 12AP-888, 2013-Ohio-1872, ¶ 12, citing *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, ¶ 11. Further, it is the duty of this court "to give effect to the words used in a statute, not to insert words not used." *State v. S.R.*, 63 Ohio St.3d 590, 595 (1992), citing *Cleveland Elec. Illum. Co. v. City of Cleveland*, 37 Ohio St.3d 50 (1988), paragraph three of the syllabus. If a statute's language is clear and unambiguous,

the court must apply the statute as written. *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 9.

{¶19} R.C. 2919.21(B) is unambiguous, and thus, we must give effect to its plain meaning. *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. Notably, the legislature used "is" when talking about the defendant's obligation of support. " 'Is' is the present tense third person singular of the verb 'to be.' " *Ohio Bur. of Workers' Comp. v. Dernier*, 6th Dist. Lucas No. L-10-1126, 2011-Ohio-150, ¶ 30; *see also Webster's Third New International Dictionary* 1197 (2002). Therefore, "is" refers to something being in the present, not in the past or in the future. *Dernier* at ¶ 30. Since Pittman's daughters are emancipated, he was under no current legal obligation to support his children at the time the State filed its indictment.[3]

{¶20} We also find the majority opinion in *Dissinger* unpersuasive because it relied on R.C. 3115.01's definition of "child support order," but that definition only applies to sections 3115.01 to 3115.59 of the Revised Code. It is only appropriate to look at other sections and chapters of the Revised Code when a statute is ambiguous. *See McAtee v. Ottawa Cty. Dept. of Human Servs.*, 111 Ohio App.3d 812, 818 (6th Dist.1996) (applying the in pari materia rule of construction

---

[3] We also note that arrearages are paid to the custodial parents or a state agency as a reimbursement, not as support for the child. *See State v. Sorrell*, 187 Ohio App.3d 286, 2010-Ohio-1618, ¶ 16 (2d Dist.) ("While the object of a support order is clearly the welfare of the dependent child, the child's claim to any arrearage owed by the offender is secondary to that of the custodial parent or state agency tasked with the responsibility of collecting and distributing the payments made pursuant to the support order fashioned by the court."). As such, there is a different level of necessity attached to arrearages.

to an ambiguous statute). Here, the statute is clear and unambiguous, and therefore, it is unnecessary to look to other Chapters of the Revised Code to ascertain the legislature's intent.

{¶21} Moreover, the term "child support order" is not even used in R.C. 2919.21(B). Instead, the legislature stated that, "[n]o person shall abandon, or fail to provide *support as established by a court order* to, another person whom, by *court order or decree, the person is legally obligated to support.*" R.C. 2919.21(B). Where the legislature uses different terms between statutes, it should be presumed that the legislature intended different meanings. *State ex rel. Fink v. Registrar*, *Ohio Bur. of Motor Vehicles*, 12th Dist. Butler No. CA98-02-021, 1998 WL 634707, *2 (Sept. 14, 1998), citing *Metro. Securities Co. v. Warren State Bank*, 117 Ohio St. 69, 76 (1927); *see also State ex rel Cordray v. Court of Claims of Ohio*, 190 Ohio App.3d 161, 2010-Ohio-4437, ¶ 27 (10th Dist.). That a "child support order" may include arrearages in R.C. 3115.01 has little persuasive effect on whether an arrearage only order can create a violation under R.C. 2919.21.

{¶22} If we were to look at other statutes to attempt to discern what the legislature meant when enacting R.C. 2919.21, we should look to R.C. 2705.031, which states that "[t]he court shall have jurisdiction to make a finding of contempt for the failure to pay support and to impose the penalties set forth in section 2705.05 of the Revised Code in all cases in which past due support is at issue *even*

*if the duty to pay support has terminated * * *.*"   (Emphasis added.)   R.C. 2705.05(E).   The Ohio Supreme Court determined that because the legislature "*expressly* granted a court the jurisdiction to hold contempt proceedings after the obligation to support a child has ended" such action was proper.   (Emphasis added.) *Cramer v. Petrie*, 70 Ohio St.3d 131, 133-134 (1994).  R.C. 2919.21 also refers to the duty to pay support, but does not include that same explicit language which would allow the prosecution of an arrearage only support order if the defendant is not under a current legal obligation to support the child.

{¶23} Even if we were to find that the statute is ambiguous, the rule of lenity would require us to affirm the trial court's judgment.  The rule of lenity is codified in R.C. 2901.04 and states that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."  R.C. 2901.04(A).  " '[T]he 'touchstone' of the rule of lenity 'is statutory ambiguity.' "  *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247 (1980), quoting *Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915 (1980).  Therefore, under this rule, ambiguity in a criminal statute "is construed strictly so as to apply the statute only to conduct that is clearly proscribed." *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, ¶ 38, citing *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219 (1997).

{¶24} Arguably, while one interpretation of R.C. 2919.21(B) could allow for the prosecution for nonpayment of an arrearage only child support order, it is just as likely that the legislature intended that the statute only be used for the prosecution of persons who are currently obligated to support his or her child, for the reasons stated above. Without the State demonstrating that R.C. 2919.21 explicitly and unambiguously allows for the prosecution for nonpayment of an arrearage only child support order, we must find in the defendant's favor.

{¶25} Accordingly, we overrule the State's sole assignment of error.[4]

{¶26} Having found no error prejudicial to the State in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., concurs.**

**/jlr**


**SHAW, J., concurring separately in Judgment Only.**

{¶27} I concur in the judgment of the majority only for the reason that under the factors set forth by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514 (1972), the unexplained delay of essentially four years between indictment and arraignment in this case was presumptively unreasonable,

---

[4] We recognize that our decision is in conflict with *State v. Dissinger*, 5th Dist. Delaware No. 02CA-A-02-010, 2002-Ohio-5301, and may be subject to certification pursuant to App.R. 25.

-12-

particularly in light of the fact that it appears that the prosecution only ever proceeded at all because Pittman responded to authorities after learning of the indictment while applying for a job. *See also*, *State v. King*, 8th Dist. Cuyahoga No. 91909, 2009-Ohio-4551; *State v. Stapleton*, 41 Ohio App.2d 219 (3d Dist.1974). As a result, I would find that for the reasons set forth in its judgment entry of August 26, 2013, the trial court's November 14, 2013, judgment dismissing Counts 5 and 6 was warranted on constitutional speedy trial grounds.