[Cite as *State v. Dyer*, 2015-Ohio-451.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26267 |
| | : | |
| v. | : | Trial Court Case No. 13-CR-1903 |
| | : | |
| LANCE DYER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of February, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 111 West First Street, Suite 518, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Lance Dyer appeals from his conviction and sentence on one count of

felonious assault on a peace officer, one count of having a weapon while under disability,

and a firearm specification.

{¶ 2} Dyer advances two assignments of error. First, he alleges ineffective assistance of counsel based on his attorney's failure to object to testimony about a high-speed police pursuit of a vehicle in which he was a passenger. Dyer asserts that the chase had nothing to do with the facts underlying the charges against him and that the testimony about it was unfairly prejudicial. Second, he challenges the legal sufficiency and manifest weight of the evidence to sustain his felonious-assault conviction, which was based on him pointing a loaded handgun at a police officer after the high-speed chase ended in a crash. Dyer insists that merely pointing a gun at someone does not constitute attempting to cause physical harm with a deadly weapon for purposes of felonious assault under R.C. 2903.11(A)(2).

{¶ 3} The record reflects that Dyer was a passenger in a Monte Carlo that had been stolen at gunpoint the prior day. (Tr. at 155, 254-255). Dayton police officers Jonathan Sopczak and Jacob Rillo saw the car while sitting in their cruiser on the morning of March 21, 2013. (*Id.*). After confirming that it was the stolen vehicle, they pulled behind it and attempted a traffic stop. (*Id.* at 156, 256). The driver of the Monte Carlo, Askiya Robinson, initially pulled over but then accelerated rapidly. (*Id.* at 156, 257). Officer Rillo, who was driving the police cruiser, pursued. (*Id.* at 157, 257). The chase continued for a couple of miles and reached a speed of seventy-six miles per hour through a residential neighborhood. (*Id.* at 157-158, 257-258). The chase ended when the Monte Carlo crashed into a fence in an alley. (*Id.* at 160, 258-259). The driver immediately fled on foot with Officer Rillo in pursuit. (*Id.* at 160-161, 259).

{¶ 4} Officer Sopczak exited the cruiser and approached the rear corner of the

Monte Carlo with his gun drawn at the "low ready" position. (*Id.* at 260). Dyer then opened the passenger door and started stepping out facing Sopczak with a semi-automatic handgun in his hand. (*Id.* at 260-265). Sopczak testified that when he saw the handgun, Dyer was only partially out of the car and the gun was pointed downward. (*Id.* at 264). From his position about ten feet away, Sopczak raised his own gun and yelled for Dyer to drop the weapon. (*Id.* at 265, 268). Dyer did not comply. With the gun still in his hand, he turned away from the officer and tried to climb the car door, which was up against a fence. (*Id.* at 266-268). When Dyer turned away, Sopczak moved forward, trying to close the distance between them. (*Id.* at 268). As the officer did so, Dyer turned back toward Sopczak while still on the car door. (*Id.* at 269). Sopczak responded by raising his gun and pointing it at Dyer, who, in turn, pointed his gun directly at Sopczak. (*Id.*). The officer fired one shot, striking Dyer in the finger. (*Id.* at 271). Dyer fell over the car door and onto the ground. He rolled toward Sopczak with his hands in the air and stated that he did not have the gun anymore. (*Id.* at 272). As Dyer attempted to stand, a police dog grabbed his leg and pulled him back down, where he was handcuffed and arrested. (*Id.* at 272-273).

{¶ 5} Based on the foregoing facts, a jury found Dyer guilty of felonious assault on a peace officer with a firearm specification. The trial court separately found him guilty of having a weapon while under disability. He received an aggregate eleven-year prison sentence. This appeal followed.

{¶ 6} In his first assignment of error, Dyer alleges that he received ineffective assistance of counsel at trial. Specifically, he claims his attorney provided prejudicially deficient representation by failing to object when the prosecutor questioned Rillo and Sopczak about "the vehicle chase and speeds." (Appellant's brief at 6). Dyer contends

this testimony had little probative value and served only to inflame the jury. (*Id.*).

{¶ 7} "To establish a claim for ineffective assistance of counsel, the defendant has the burden of demonstrating that: 1) the performance of defense counsel was seriously flawed and deficient, and 2) there is a reasonable probability that the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation." *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 26.

{¶ 8} Having reviewed the record, we see no ineffective assistance here. Defense counsel reasonably may have concluded that some testimony about the police chase was admissible to provide context for the armed encounter that followed. The testimony was not lengthy. Nor was it overly inflammatory, particularly since the officers made clear that Dyer was a passenger in the fleeing Monte Carlo. The first assignment of error is overruled.

{¶ 9} In his second assignment of error, Dyer challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction for felonious assault on a peace officer. In support of his manifest-weight and legal-sufficiency arguments, which he briefs together, Dyer claims his mere act of pointing a gun at Sopczak, absent any additional threat indicating an intent to use the weapon, cannot support his conviction.

{¶ 10} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that Dyer's felonious-assault conviction is supported by legally sufficient evidence and is not against the weight of the evidence. He was convicted of violating R.C. 2903.11(A)(2), which prohibits knowingly causing or attempting to cause physical harm with a deadly weapon. The offense was a first-degree felony under R.C. 2903.11(D)(1)(a) because the victim was a peace officer. The only issue raised by Dyer's appeal is whether the State proved an attempt to cause physical harm.

{¶ 13} "[A] criminal attempt is a purposeful act or omission which constitutes a

substantial step in a course of conduct planned to culminate in [the] commission of the crime." (Citations omitted) *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 17. To qualify as a substantial step, the act or omission must be "strongly corroborative" of a criminal purpose. *Id.* "Although the determination of whether a substantial step has been taken toward the commission of felonious assault is a factual one, it is not dependent on the subjective impressions of the victim." (Citation omitted) *Id.* The Ohio Supreme Court has observed that "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Brooks*, 44 Ohio St. 3d 185, 192, 542 N.E.2d 636 (1989). This is so because "the act of pointing a deadly weapon at another is essentially an equivocal act as it relates to the accused's intention to cause physical harm to another by use of that weapon." *Id.* On the other hand, drawing a firearm and orally threatening to kill the victim does support a conviction under R.C. 2903.11(A)(2). *Id.*

{¶ 14} We agree with the Eighth District's observation that "felonious assault requires a case by case analysis of the facts concurrent to the pointing of the gun." *State v. Turner*, 8th Dist. Cuyahoga No. 78520, 2001 WL 1671434, *5 (Nov. 29, 2001). While merely pointing a gun at another will not support a felonious-assault conviction, "the *Brooks* holding is that the trier of fact may infer the existence of [the attempt to cause physical harm] element from the circumstances that surround, and indeed prompt, the aiming of the deadly weapon." *State v. Mills*, 1st Dist. Hamilton No. C-880581, 1990 WL 203563, *5 (Dec. 12, 1990).

{¶ 15} Here the circumstances that surrounded and prompted Dyer's act of

pointing a loaded gun at Sopczak strongly corroborated his intent and attempt to use the weapon. Following a high-speed chase, Dyer exited a crashed vehicle that had been reported stolen at gunpoint the prior day. He held a gun in his hand and pointed it downward as he faced Sopczak, who had his own firearm aimed toward Dyer. At that point, Dyer turned away and apparently attempted to flee by climbing the car door. When Sopczak came closer, Dyer turned back toward the officer, who had his service weapon pointed at Dyer. Despite having a firearm trained on himself at close range, Dyer pointed his own gun directly at Sopczak. (Tr. at 265-271). Under these circumstances, the jury reasonably could have inferred that Dyer intended and attempted to shoot Sopczak and failed to do so only because Sopczak immediately fired and shot him first.[1] Such a conclusion is supported by legally sufficient evidence and is not against the manifest weight of the evidence. The second assignment of error is overruled.

{¶ 16} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Charles W. Slicer, III
Hon. Dennis J. Adkins

---

[1] In this regard, the jury correctly was instructed that "[t]he act of pointing a deadly weapon at another coupled with a threat which indicates an intention to use such weapon is sufficient to convict the Defendant of the offense of felonious assault." (Tr. at 423). The jury also was instructed that a "threat" includes "a statement or conduct whether direct or indirect[.]" (*Id.* at 423-424).