[Cite as *State v. Peters*, 2023-Ohio-4362.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 14-22-21

    v.

STEVEN PETERS,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2021-CR-0207

Judgment Affirmed

Date of Decision:  December 4, 2023

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Raymond Kelly Hamilton* **for Appellee**

**MILLER, P.J.**

{¶1} Defendant-appellant, Steven Peters ("Peters"), appeals the October 20, 2022 judgment of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} This case originates from a September 8, 2021 incident at the Super 8 Motel in Marysville, where Peters got into an altercation with Kaleigh Dallas ("Dallas"). The altercation culminated in a heated argument, during which Peters held a gun to Dallas' body. Additionally, Dallas alleged that Peters stole items from her motel room during the incident.

{¶3} On October 12, 2021, the Union County Grand Jury indicted Peters on four counts relating to the incident: Count One for felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; Count Two for robbery in violation of R.C. 2911.02(A)(1), a second-degree felony; Count Three for robbery in violation of R.C. 2911.02(A)(3), a third-degree felony; and Count Four for theft in violation of R.C. 2913.02(A)(1), a first-degree misdemeanor. Counts One and Two each featured a firearm specification pursuant to R.C. 2941.145(A). On November 22, 2021, Peters appeared for arraignment and pleaded not guilty to the counts and specifications in the indictment.

{¶4} The matter proceeded to a jury trial on August 30 and 31, 2022. At the close of the State's case, Peters moved for a judgment of acquittal under Crim.R. 29 as to all counts and specifications in the indictment. The trial court granted Peters' motion as to Count Two and its attendant firearm specification, but otherwise denied the motion. On August 31, 2022, the jury found Peters guilty of Count One and its accompanying firearm specification, but not guilty of Counts Three and Four. The trial court accepted the jury's verdicts and continued sentencing until a later date.

{¶5} On October 20, 2022, the trial court held a sentencing hearing. For the felonious assault charge, the judge sentenced Peters to a mandatory minimum prison term of four years with a maximum of six years. The trial court specified this was a mandatory prison term. The trial court also sentenced Peters to an additional mandatory term of three years in prison for the firearm specification. The trial court ordered the sentence for the specification be served prior and consecutive to the felonious assault sentence, resulting in an aggregate mandatory minimum term of seven years' imprisonment and an aggregate maximum term of nine years' imprisonment. The trial court filed its judgment entry of sentence on October 20, 2022.

## II. ASSIGNMENTS OF ERROR

{¶6} On October 24, 2022, Peters timely filed a notice of appeal. He raises the following five assignments of error for our review:

-3-

**First Assignment of Error**

**The jury lost its way when reviewing the evidence, resulting in a verdict that is against the manifest weight of the evidence and sufficiency of the evidence.**

**Second Assignment of Error**

**The trial court erred when it included in the jury instructions references to sufficiency of the evidence, as inclusion created confusion and prejudiced appellant.**

**Third Assignment of Error**

**Trial court erred when it overruled appellant's Criminal Rule 29 motions for acquittal on the felonious assault and gun specification at the conclusion of the State's evidence and then again at the end of the trial.**

**Fourth Assignment of Error**

**Appellant was wrongfully indicted of a gun specification in connection with an underlying offense that contains the element that appellant possesses a gun to commit the offense. The addition of a gun specification to an offense that has as an element of the offense the presence or use of a firearm in the commission of the offense is unconstitutional.**

**Fifth Assignment of Error**

**The trial court erred when it sentenced appellant to a mandatory minimum prison sentence on the felonious assault charge.**

III.  **DISCUSSION**

{¶7} For ease of discussion, we will consider Peters' first and third assignments of error together. Then, we otherwise consider Peters' assignments of error individually and in the order presented.

-4-

Case No. 14-22-21

### A. First and Third Assignments of Error

{¶8} In his first and third assignments of error, Peters argues the jury's verdict is not supported by sufficient evidence and is against the manifest weight of the evidence.[1]

#### i. Standards of Review

{¶9} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541 (1997). Accordingly, we address each legal concept individually.

{¶10} Regarding sufficiency of the evidence, a sufficiency analysis "'determine[s] whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *Id.* at 386, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). In reviewing the sufficiency of the evidence to support a criminal conviction, we "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as recognized in State v. Smith*, 80 Ohio

---

[1] Peters' first assignment of error argues that the verdict is both against the weight of the evidence and against the sufficiency of the evidence. Peters' third assignment of error argues that the trial court erred when it denied his motions for acquittal of the felonious assault and gun specification charges. "Because the purpose of a Crim.R. 29 motion for acquittal 'is to test the sufficiency of the evidence presented at trial,' we 'review[] a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim.'" (Bracketing in original.) *State v. Brown*, 3d Dist. Allen No. 1-19-61, 2020-Ohio-3614, ¶ 35, quoting *State v. Willis*, 12th Dist. Butler No. CA2009-10-270, 2010-Ohio-4404, ¶ 9; *see also* Crim.R. 29(A).

St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 3d Dist. Allen No. 1-22-27, 2023-Ohio-2193, ¶ 26; *see also Jenks* at 279.

**{¶11}** Regarding manifest weight of the evidence, "[a]lthough a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 44, quoting *Thompkins* at 387. Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119; *see also Thompkins* at 387.

### ii. Felonious assault

{¶12} Peters was convicted of one count of felonious assault, in violation of R.C. 2903.11(A)(2). The offense is codified at R.C. 2903.11, which states, in relevant part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Therefore, the State is required to prove, beyond a reasonable doubt, that the defendant (1) knowingly, (2) caused or attempted to cause physical harm to another, (3) by means of a deadly weapon or dangerous ordnance. The term "deadly weapon," as used in that statute, "means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A); *see also* R.C. 2903.11(E)(1).

{¶13} A reasonable jury can convict a defendant of felonious assault if the defendant knowingly pointed a gun that qualifies as a "deadly weapon" at the victim and either fired or attempted to fire in the victim's direction. *State v. Brooks*, 44 Ohio St.3d 185, 192, 542 N.E.2d 636 (1989). However, "[t]he act of pointing a deadly weapon at another, without additional evidence of the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Id.* at syllabus. Simply pointing a deadly weapon at another is not an "attempt to cause physical harm" to another under the statute. *Id.* at 189. However, pointing a deadly weapon at another satisfies the knowingly element of felonious assault. *State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-

Ohio-5555, ¶ 46 ("the State presented sufficient evidence that [the defendant] pointed the gun at [the victim], which satisfies the element of felonious assault that [the defendant] acted knowingly").

{¶14} Two years after *Brooks*, the Ohio Supreme Court identified one example of sufficient "additional evidence of the actor's intention," when it held: "[t]he act of pointing a pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), syllabus. Our court later explained: "'the *Brooks* holding is that the trier of fact may infer the existence of the attempt to cause physical harm element from the circumstances that surround, and indeed prompt, the aiming of the deadly weapon.'" *Potts* at ¶ 53, quoting *State v. Dyer*, 2d Dist. Montgomery No. 26267, 2015-Ohio-451, ¶ 1 (alterations adopted). For example, in *Potts*, the defendant's felonious assault conviction was based on sufficient evidence because the jury could reasonably infer he attempted to seriously harm the victim when he aggressively forced his way into the victim's house while pointing a gun at the victim. *Id.* at ¶ 60. Additionally, the act of pointing a gun at the victim and instructing him or her not to move, or to get out of the house, may demonstrate the intent to cause physical harm by means of a deadly weapon. *See, e.g., State v. Smiley*, 8th Dist. Cuyahoga No. 97047, 2012-Ohio-1742, ¶ 29 (sufficient evidence to convict defendant of felonious assault where defendant

pointed a gun at the victim's chest and said "don't move"); *State v. Simon*, 3d Dist. Hancock No. 5-98-14, 1998 WL 735868, *4 (Oct. 21, 1998) (defendant's intention to use the gun pointed at the victim "was evidenced by his statement 'Get out of my house'").

### iii.    Gun specification

{¶15} The jury also found Peters guilty of the gun specification related to the felonious assault offense. The State was required to prove, beyond a reasonable doubt, that Peters "had a firearm on or about [his] person or under [his] control while committing the offense" of felonious assault and "displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A); *see also* R.C. 2929.14(B)(1)(a)(ii); *State v. Smith*, 8th Dist. Cuyahoga No. 111274, 2023-Ohio-603, ¶ 118. The term "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1); *see also* R.C. 2941.145(F) ("[a]s used in this section, 'firearm' has the same meaning as in section 2923.11 of the Revised Code"). That term "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." *Id.* Thus, to support a firearm specification, the State must also "'prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense.'" *State v. Elliott*, 3d Dist. Logan No.

8-21-35, 2022-Ohio-3778, ¶ 51, quoting *State v. Staten*, 10th Dist. Franklin No. 18AP-48, 2018-Ohio-4681, ¶ 11.

{¶16} "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). This includes explicit or implicit threats made by the person in control of the firearm. *Elliott* at ¶ 54; *Thompkins*, 78 Ohio St.3d at 384, 678 N.E.2d 541 ("where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable"). When a defendant states he has a gun and will use it, "a reasonable trier of fact can infer both the existence and the operability of a gun." *Elliott* at ¶ 61. "The State may establish that a firearm was operable 'by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime.'" *Id.* at ¶ 53, quoting *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990), syllabus. Yet, the mere possession of a gun, without something more, is not enough to allow for a finding that it is operable. *Id.* at ¶ 69.

### iv. Evidence at trial

{¶17} The trial lasted for two days. Officer Jason Nichols ("Officer Nichols") testified that he was the first officer at the scene on September 8, 2021 at the Super 8 Motel. (Aug. 30, 2022 Tr. at 24-25). The motel was located at 16510 Square Drive, Marysville, Ohio in the County of Union. (*Id.*).

{¶18} Another witness was Jimmy Kyle McCune ("McCune"), who was present during the incident at the motel on September 8, 2021. (Aug. 30, 2022 Tr. at 81-82, 85-86). At the time he testified, McCune had criminal charges pending against him related to the incident (including complicity for felonious assault), but he testified without any agreement with the prosecutor and did so, according to McCune, as a sign of genuine remorse. (*Id.* at 78-79, 116-18). McCune explained he was not expecting to receive a "reward" or anything for his testimony; he just wanted the truth to be known. (*Id.*)

{¶19} McCune and Peters had known each other prior to the incident. (*Id.* at 79-80, 106). In fact, they are cousins, worked together doing construction or remodeling jobs, and Peters had periodically stayed at McCune's house. (*Id.*; Aug. 31, 2022 Tr. at 34-35, 37-38). McCune said he also had known Dallas for about a month or two prior to the incident, meeting her for the first time when Peters was present too. (Aug. 30, 2022 Tr. at 82, 104-05). According to McCune, Peters had a romantic relationship with Dallas at some point prior to the day of the incident. (*Id.* at 105). Yet, on September 8, 2021, McCune went to the motel to have sex with

Dallas. (*Id.* at 81-82). He drove to the Super 8 Motel with Peters, who agreed to stay in the car. (*Id.* at 83). After arriving, Peters told McCune that he wanted to go to Dallas' room to talk to her, but McCune told him "no." (*Id.* at 83-84).

{¶20} McCune testified that, after he had sex with Dallas, he went to a convenience store; Peters was at the convenience store and then followed McCune back up to Dallas' room. (*Id.* at 84-85). Peters tried to get into Dallas' room, but McCune pushed him out and Peters went back down to the car. (*Id.*). Eventually, McCune and Dallas exited her room to smoke a cigarette. (*Id.*). According to McCune, Peters started saying that Dallas was "a lying, cheating this and that," and Peters and Dallas got into a verbal argument. (*Id.*). McCune testified: Peters then "pulled out the gun and he said, bitch, I'll shoot up this whole Super 8" and started waving the gun around. (*Id.* at 85). Although McCune did not know Peters had brought the gun to the motel, McCune was familiar with the weapon and understood it to be a real gun. (*Id.* at 90-91). McCune testified that Peters then came up to where Dallas was located, put the gun to her head, and screamed "I'll blow your head off." (*Id.* at 85-86).

{¶21} During the trial, McCune also looked at a surveillance video screenshot, in which Peters was up against Dallas' body with the gun; McCune testified Peters told Dallas "he was going to blow her brains out" at that time. (*Id.* at 93-94; State's Exhibit 14). McCune believed that Peters was going to shoot both him and Dallas. (Aug. 30, 2022 Tr. at 97). McCune, who was standing next to

-12-

Dallas during this time, tried to convince Peters to put the gun down, which Peters ultimately did, and then Peters and Dallas started physically fighting. (*Id.* at 85-86, 92-95; State's Exhibit 14). Peters and Dallas ended up fighting in Dallas' room until McCune finally got Peters out of the room and then they (McCune and Peters) left the motel together. (Aug. 30, 2022 Tr. at 86-87, 97-98).

{¶22} Dallas also testified at the trial. She had been staying at the motel prior to and at the time of the incident. (Aug. 30, 2022 Tr. at 130, 133). She believed that Peters got upset on the day of the incident because she was being intimate with McCune and not with him. (*Id.* at 134). She testified that Peters pulled a gun from his car and was waiving it around in the motel's parking lot, before he came up to where she was located and held the gun to her two different times. (Aug. 30, 2022 Tr. at 138, 151-52). According to Dallas, on one occasion, Peters put the gun to her head and said to her, "you're not that big and bad now, huh." (*Id.* at 139). Dallas testified:

> Q. And so, here is a screen shot, number 11, State's Exhibit 14, what is Steven Peters doing?
>
> A. He has the gun and he's raising it up again to my head.
>
> Q. Do you recall anything that he was – Steven Peters was saying as he had the gun raised to your head the first time or the second time?
>
> A. Yes. He had mentioned about big and bad now, huh.
>
> Q. What did you interpret that as? Those words spoken by Steven Peters?

A. Um, that he thought that I was intimidated and that I was afraid and that I was weak and that, you know, him having that gun to me I would bow down and listen and just think he's all that, you know.

Q. Uh-huh.

A. And I didn't.

(*Id.* at 152).

{¶23} Dallas also testified that she was concerned that the gun was going to go off and "wasn't scared to die but [she] did fear for [her] life." (*Id.* at 140-41). She further testified: "* * * I wasn't scared to die. I'm not going to sit there and beg for my life * * *." (*Id.*). Additionally, she said: "I feared that I was going to lose my life and not be able to be there for my son." (*Id.* at 156). However, Dallas also testified, on cross-examination, that she told a detective she knew Peters was not going to shoot her and that Peters was just showing off and flexing the gun. (*Id.* at 156-57).

{¶24} After the State closed its evidence, Peters testified on his own behalf. He admitted he was at the Super 8 Motel in Marysville on September 8, 2021 and that he and Dallas got into an argument after Dallas and McCune exited her room. (Aug. 31, 2022 Tr. at 36, 39-40). He also admitted that, after initially arguing with Dallas, he went to the car and got a gun—which he said belonged to McCune. (*Id.* at 40). He said the gun was a semi-automatic weapon that originally was "cocked back," but without a clip or bullets in it. (*Id.* at 41). The clip was sitting beside the gun in the car. (*Id.*). He then pulled the gun's safety down, pulled back the rear of

the gun, and closed it before proceeding up to Dallas' room "to scare her." (*Id.* at 42). He admitted he "was going upstairs to frighten her with the weapon" because he "was mad." (*Id.*).

{¶25} Peters also admitted he "put the gun to the back of [Dallas'] back." (*Id.*). Regarding what he said when he put the gun up to Dallas' back, Peters testified that he "was laughing at her and we was [sic] exchanging cuss words back and forth. Just cussing at each other." (*Id.* at 43). He also said that they were just arguing about Dallas' child. (*Id.* at 55). Peters admitted he subsequently put the gun up to Dallas' neck too. (*Id.* at 43). According to Peters, in the midst of arguing with Dallas, he then pulled the gun away from Dallas' neck ("[b]ecause [he] was thinking it was the wrong thing"), walked over to McCune, and gave McCune the gun. (*Id.* at 42-44, 57). Peters said that his finger was never on the trigger of the gun and that, as far as he knew, there was no clip or bullet in the gun. (*Id.* at 44). Peters also testified he, Dallas, and McCune "could clearly see that [the gun was] empty" and that he told them the gun was empty and was unloaded. (Aug. 31, 2022 Tr. at 52-53, 58). However, Peters admitted on cross-examination he was "asking the jury to believe a pretty fantastical story that" he had told Dallas and McCune the gun was unloaded. (*Id.* at 58). He also agreed that his actions in going up to Dallas and pointing a gun at her terrorized Dallas. (*Id.* at 67).

### v. Peters' conviction was supported by sufficient evidence

{¶26} Peters argues the State failed to present sufficient evidence to send the charge of felonious assault and accompanying gun specification to the jury, and, therefore, the trial court erred in overruling his Crim. R. 29 motions for acquittal. (Appellant's Brief at 13-14). He asserts the State "failed to present evidence that Mr. Peters made a threat and that the threat indicated an intention to use the gun." (*Id.* at 13). He also asserts the State did not present any evidence that the gun was operable to support a conviction on the gun specification.

{¶27} Regarding the felonious assault conviction, we disagree with Peters that the State failed to present sufficient evidence to survive a Crim.R. 29 motion. On the contrary, we find the State presented sufficient evidence Peters made a threat and the threat indicated an intention to use the gun. For example, during the State's presentation of evidence, McCune testified that Peters, while pointing a gun at Dallas, threatened her. (*See, e.g.,* Aug. 30, 2022 Tr. at 85-86, 92-95, 102). The following exchange took place at trial with McCune on the stand:

> Q. Okay. Jimmy [McCune], did Steven Peters make any statements to Miss Dallas as he was holding the gun against her?
>
> A. Yes.
>
> Q. What did he say?
>
> A. He said I'm going to blow your brains out.

(Aug. 30, 2022 Tr. at 102). Again, the Ohio Supreme Court has explained: "[t]he act of pointing a deadly weapon at another coupled with a threat, which indicates an

intention to use such weapon, is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038, at syllabus. Therefore, when viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt both at the close of the State's evidence and at the close of Peters' evidence. R.C. 2903.11(A)(2); *Smiley*, 2012-Ohio-1742, at ¶ 29 (sufficient evidence to convict defendant of felonious assault where evidence supported that defendant had pointed a gun at the victim's chest and said "don't move"); *Potts*, 2016-Ohio-5555, at ¶ 60 (felonious assault conviction was based on sufficient evidence where, "under the specific facts of [the] case, a jury could reasonably infer that [defendant] attempted to seriously harm [the victim] because he forced his way into [the victim's] house while pointing a gun at" the victim).

{¶28} Regarding the gun specification, we likewise disagree with Peters and find the State presented sufficient evidence regarding Peters' use of the gun and its operability to warrant sending the charge to the jury. During the State's presentation of evidence, testimony from McCune and Dallas, as well as screenshots from the video evidence, supported that Peters had a gun while committing the offense. (*See, e.g.,* Aug. 30, 2022 Tr. at 85-86, 92-95, 139-40, 152; State's Exhibit 14). Testimony and surveillance video screenshots supported that Peters displayed the gun, brandished the gun, and used the gun to facilitate the offense. (*See, e.g.,* Aug. 30,

-17-

2022 Tr. at 85-86, 92-95, 139-40, 152; State's Exhibit 14). Testimony also supported that the gun qualified under the statute as a "firearm" that was operable or could readily have been rendered operable at the time of the offense. (*See, e.g.,* Aug. 30, 2022 Tr. at 85-86, 89-90, 94, 102). For example, in addition to testifying that Peters had said "bitch, I'll shoot up this whole Super 8," McCune testified that Peters held the gun to Dallas' head and told her "I'm going to blow your brains out" (*id.* at 85, 102). *See Elliott*, 2022-Ohio-3778, at ¶ 53-54, 61 (testimony of lay witnesses, who had observed the weapon and circumstances surrounding the crime, regarding threats may be relied on as circumstantial evidence that the firearm was operable or capable of being readily rendered operable). Furthermore, Dallas testified she was concerned the gun was going to go off and feared she was going to lose her life, and McCune testified he believed Peters was going to shoot both him and Dallas (*see, e.g.,* Aug. 30, 2022 Tr. at 97, 140-41, 156). Therefore, when viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the gun specification proven beyond a reasonable doubt both at the close of the State's evidence and at the close of Peters' evidence. R.C. 2941.145(A); R.C. 2929.14(B)(1)(a)(ii); *Smith*, 2023-Ohio-603, at ¶ 118; *Smiley*, 2012-Ohio-1742, at ¶ 32-34 (trier of fact reasonably concluded the firearm was operable, based on the victim's testimony that the defendant pointed a gun at his chest and told him "don't move" and the victim feared for his life); *State v. Ware*, 9th Dist. Summit No. 22919, 2006-Ohio-2693, ¶ 14 (sufficient evidence

that gun was operable where the victim testified the defendant pointed a handgun at him and threatened him).

**{¶29}** We find that, viewing the evidence in a light most favorable to the prosecution, the trial court did not err in denying Peters' Crim.R. 29 motions for acquittal on the felonious assault and related gun specification.

### vi. Peters' conviction was not against the manifest weight of the evidence

**{¶30}** Peters also argues "[t]he conflicting testimony and evidence in this case clearly show the jury lost its way and that the verdict is against the weight of the evidence," and he asks us to reverse the jury's guilty verdict. (Appellant's Brief at 3, 8).

**{¶31}** We find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed. The weight of the evidence, including screenshots from the surveillance video coupled with McCune's testimony, fully supports the jury's guilty verdict. Peters admitted (multiple times) that he pointed a gun at Dallas. (*See, e.g.,* Aug. 31, 2022 Tr. at 60). Additionally, although Peters testified he and Dallas were merely exchanging "cuss words back and forth" and arguing about Dallas' child (*see* Aug. 31, 2022 Tr. at 43, 55), testimony from McCune supports that Peters threatened to shoot her when he pointed the gun at her. Specifically, McCune testified he observed Peters put the gun to Dallas' head and scream "I'll blow your head off" and, later, "I'm going to

blow your brains out." (Aug. 30, 2022 Tr. at 85-86, 102). The evidence presented does not weigh heavily against the conviction of felonious assault. *Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038, at syllabus*; State v. Battle*, 5th Dist. Morgan No. 09 AP 0001, 2010-Ohio-4327, ¶ 110-114 (despite conflicting testimony between the victim's and defendant's versions of events, the conviction for felonious assault was not against the manifest weight of the evidence where the victim's testimony supported that defendant pointed a gun at him and ordered him to get out of the house).

{¶32} Regarding the gun specification, Peters argues the State did not offer any evidence that the gun was operable. However, Peters himself testified on direct examination to the following:

Q. And, again, you're not denying that you took that gun out of his car?

A. No.

Q. And you're not denying that you've seen that gun before?

A. No.

Q. And, as far as you know, that's an operable gun?

A. Yeah.

Q. And you've even played with that gun or had that gun –

A. Yes.

Q. – while in Jimmy's presence?

A. Yes.

(Aug. 31, 2022 Tr. at 50). Additionally, as set forth above in the sufficient evidence analysis, there is ample testimony supporting a finding that, despite apparently being unloaded, the gun was operable or could have been rendered operable at the time of the offense. R.C. 2923.11(B)(1) (the term "'[f]irearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable").

{¶33} Having reviewed the entire record, weighing the evidence and all reasonable inferences and making the considerations set forth above, we do not find "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, at ¶ 44.

{¶34} Finally, Peters makes another related argument in his briefing. Specifically, he asserts the trial court committed plain error when it allowed questioning about what took place in the hotel room (after Peters was no longer in possession of the handgun) because that line of questioning only served to prejudice the jury against him, despite his counsel not objecting to the questioning. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To qualify for plain-error relief, the appellant must establish: (1) occurrence of an error, i.e., a deviation from a legal rule; (2) the error was plain, i.e., it was an obvious defect in the trial proceedings; and (3) the error affected the appellant's substantial rights, meaning

-21-

the error "must have affected the outcome of the trial." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. Yet, even when an appellant establishes those three prongs, "[n]otice of plain error under CrimR. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *see also Morgan*, 2017-Ohio-7565, at ¶ 37; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 23 ("even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it").

{¶35} To us, Peters has not met the plain-error standard. First, he ignores that he was also on trial for two counts of robbery and one count of petty theft. The State's theory at trial regarding those charges was that Peters robbed Dallas of $100 in cash, a cellphone, and cigarettes from her hotel room after Peters had pointed the gun at Dallas outside of her room. (*See, e.g.,* Aug. 30, 2022 Tr. at 17-18; Aug. 31, 2022 Tr. at 50 (Peters' counsel asking Peters on direct examination, "Did you ever take a hundred dollars out of the room?")). Dallas testified that, after Peters had been in her hotel room and fought with her there, she looked for her belongings that she had stored in her room and realized one hundred dollars, a pack of cigarettes, and her phone were missing. (Aug. 30, 2022 Tr. at 149, 153-54). Second, starting with the very first witness, Peters' counsel attempted to erode Dallas' credibility. This included Peters' counsel's questioning that suggested Peters did not harm

Dallas in the way she had told police officers (including that he put her on the bed, jumped on top of her, and began punching her in the head and body). We also note that, not only did Peters' trial counsel not object to the line of questioning at issue, he initiated a series of questions during his direct examination of Peters regarding what happened in the motel room. (Aug. 31, 2022 Tr. at 47-48). In short, the trial court did not commit plain error when it allowed the questioning.

{¶36} Peters' first and third assignments of error are overruled.

### B. Second Assignment of Error

{¶37} Peters' second assignment of error relates to jury instructions. Specifically, he takes issue with the following instructions to the jury regarding felonious assault:

> As it relates to the knowingly element of Felonious Assault, Ohio law has determined that evidence of a defendant pointing a gun at the victim is legally sufficient, if believed, to prove the defendant acted knowingly.
>
> As it relates to the attempt to cause physical harm element of Felonious Assault, Ohio law has determined that evidence of a defendant making verbal threats while pointing a gun at the victim is legally sufficient, if believed, to prove the defendant attempted to cause the victim physical harm.

(Aug. 31, 2022 Tr. at 199). The State had requested these instructions be included in the instructions to the jury, and Peters' counsel objected to their inclusion during the trial. (*Id.* at 88-89).

**{¶38}** Given their reference to what "is legally sufficient," Peters argues that these jury instructions created confusion regarding the role of a jury versus the role of a judge, reducing the State's burden of "beyond a reasonable doubt" to merely requiring "sufficient evidence," and prejudiced him. Additionally, he contends that they were not a correct statement of the law and that their inclusion materially affected the outcome of the case.

### i. Standard of Review for Disputed Jury Instructions

**{¶39}** "Abuse of discretion is the standard of review for disputed instructions." *State v. White*, 6th Dist. Lucas No. L-10-1194, 2013-Ohio-51, ¶ 97, *aff'd*, 2015-Ohio-492; *see also State v. Chavez*, 3d Dist. Seneca Nos. 13-19-05, 13-19-06, and 13-19-07, 2020-Ohio-426, ¶ 58 ("[g]enerally, appellate courts review alleged errors in jury instructions for an abuse of discretion"). "An abuse of discretion 'connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 181, quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

### ii. Applicable Law

**{¶40}** General legal principles regarding the elements and State's burden for proving a felonious assault under R.C. 2903.11(A)(2) are set forth above. Additionally, "[a] trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which

are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "We require a jury instruction to present a correct, pertinent statement of the law that is appropriate to the facts." *Id.* However, there is a limit to this requirement because, for example, no purpose is served by requiring courts to present redundant jury instructions or instructions so similar to other instructions as to be confusing. *Id.*

{¶41} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240. However, "[t]he relevant principle for jury instructions is not one of abstract correctness, but is whether an instruction—even if a correct statement of law—is potentially misleading." *White*, 2015-Ohio-492, at ¶ 52. Yet, "jury instructions must be considered as a whole." *State v. Coleman*, 37 Ohio St.3d 286, 290, 525 N.E.2d 792 (1988). "A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus.

{¶42} Finally, Peters concedes in his brief that, "even if an instruction was inappropriate, if it did not materially affect the outcome of the case, then it would

not be proper to reverse the judgment." (Appellant's Brief at 8, citing *State v. Copeland*, 8th Dist. Cuyahoga No. 106988, 2019-Ohio-1370, ¶ 28). This Court has previously explained that, if we find the trial court erred in instructing the jury, then we must "determine whether that error was harmless or prejudicial." *State v. Noggle*, 140 Ohio App.3d 733, 749, 749 N.E.2d 309 (3d Dist.2000). "'Harmless error' is defined in CrimR. 52(A) as '[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *.'" *Id.* "'To be deemed nonprejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt.'" *Id.*, quoting *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), paragraph three of the syllabus. Additionally, "'[e]rror, in order to be construed as prejudicial error, must be an incorrect statement of the law.'" *Id.*, quoting *State v. Sargent*, 41 Ohio St.2d 85, 91, 322 N.E.2d 634 (1975).

### iii.    Analysis

{¶43} First, we disagree with Peters' argument that any mention of "sufficiency of the evidence" in the jury instructions caused a confusion of roles between the jury and the court, as well as with his assertion that the instructions prejudiced him by reducing the State's burden. His argument ignores the entirety of the jury instructions and, instead, incorrectly looks only to the at-issue instructions in isolation. *Price*, 60 Ohio St.2d 136, 398 N.E.2d 772, at paragraph four of the syllabus.

**{¶44}** At trial, the judge instructed the jury: "[t]he defendant is presumed innocent unless his guilt has been established beyond a reasonable doubt" and "[t]he defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense charged in the indictment." (Aug. 31, 2022 Tr. at 183-184). The trial court also instructed the jury: "Reasonable doubt is present when, after you have carefully considered and compared all of the evidence, you cannot say that you are firmly convinced of the truth of the charge." (*Id.* at 184).

**{¶45}** Regarding felonious assault, the trial court instructed the jury: "Before you can find the defendant guilty of Felonious Assault, you must find that the State of Ohio has proven beyond a reasonable doubt that on or about September 8, 2021, in Union County, Ohio, Defendant Steven Peters did knowingly cause or attempt to cause physical harm to Kaleigh Dallas by means of a deadly weapon or dangerous ordnance, to-wit: A handgun." (*Id.* at 192). Regarding some of these terms, the trial court instructed:

> A person acts knowingly regardless of purpose when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.
>
> * * *
>
> Attempt means no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of offense – of an offense shall engage in conduct that, if successful, would constitute or result in the offense.

> Cause is an act or failure to act in which – which is a natural and continuous sequence directly produces the physical harm and without which it would not have occurred.

> Physical harm to persons means any injury, illness or other psychological impairment regardless of its gravity or duration.

(*Id.* at 193-194). It was after this point that the judge gave the portion of the instructions at issue in this appeal, quoted above.[2] (*Id.* at 199).

**{¶46}** Peters' argument also ignores that numerous courts have upheld jury instructions containing similar language regarding sufficient evidence. *See, e.g., State v. Cochran*, 2d Dist. Greene No. 2019-CA-41, 2020-Ohio-3054, ¶ 18, 23, 28-29 (rejecting appellant's argument that a felonious assault instruction pertaining to sufficiency of evidence invited the jury to ignore an element of the offense); *State v. Collins*, 8th Dist. Cuyahoga No. 89529, 2008-Ohio-578, ¶ 60-70; *State v. Turner*, 8th Dist. Cuyahoga No. 78520, 2001 WL 1671434, *4-6 (Nov. 29, 2001); *State v. Stone*, 11th Dist. Ashtabula, No. 98-A-0102, 1999 WL 1313620, *3 (Dec. 10, 1999). For example, in *Collins*, the defendant-appellant argued he was denied due process

---

[2] Additionally, in closing arguments, the State briefly previewed the instructions at issue in this appeal, and Peters' trial counsel then likewise addressed those instructions. (Aug. 31, 2022 Tr. at 147-48, 172-76). Peters' trial counsel stated that he did not want the jury to be confused about the concept of sufficiency. He told them that, although the State argued what evidence would be legally sufficient to support a finding of guilt, "that doesn't prevent you, as the jury, still having to find beyond a reasonable doubt that the defendant acted knowingly and it doesn't mean that if you think that happened, you have to find beyond a reasonable doubt that the defendant acted knowingly. It just means from a point of law there is a sufficient credible basis where you could find the defendant acted knowingly." (*Id.* at 173-174). Peters' trial counsel made similar remarks with respect to the attempted-physical-harm portion of the instruction, telling the jurors they "could determine that an attempt to cause physical harm was made not that you have to and not that the State is relieved of their burden beyond a reasonable doubt because they still have to find the actual elements of the crime." (*Id.* at 174). Peters' trial counsel concluded: "[P]lease have that distinction and try not to get confused between what is a sufficient factual basis where an Appellate Court wouldn't overturn your verdict and what you actually have to do to follow the law." (*Id.* at 176).

of law when the court gave an (allegedly) incomplete instruction on felonious assault, effectively directing a verdict of guilty. The appellate court rejected the argument, concluding the trial court properly instructed the jury in telling it: "The act of pointing a deadly weapon at another, coupled with a threat which indicates intention to use such weapon, is sufficient evidence to convict a defendant of the offense of felonious assault." *Collins* at ¶ 64, 70. In *Turner*, the defendant-appellant made an argument similar to Peters' argument here: "the court's instruction confused the elements of felonious assault with the concept of sufficiency of the evidence when the court essentially charged the jury that threatening the victim with a firearm, when the appellant had previously discharged the firearm, is sufficient for a conviction." *Turner* at * 4. In rejecting this argument, the appellate court found "the jury instructions, when considered as a whole, provided the jury with all the information necessary for it to weigh the evidence and arrive at its conclusion." *Id.* at *6. Based on the instructions as a whole and applicable caselaw, we do not find error in the trial court's reference to what "is legally sufficient" in the instructions at issue.

{¶47} Second, we reject Peters' argument that the jury instructions were not a correct statement of the law and materially affected the outcome of the case. The instructions at issue are a correct statement of law in accordance with our precedent. *Potts*, 2016-Ohio-5555, at ¶ 46 ("the State presented sufficient evidence that [defendant] pointed the gun at [victim], which satisfies the element of felonious

assault that [defendant] acted knowingly"), ¶ 50 (a reasonable jury could convict the defendant of felonious assault if he had pointed his weapon at the victim and either fired or attempted to discharge his weapon in the victim's direction "or if [the defendant] verbally threatened [the victim] while pointing the gun at him").

**{¶48}** We acknowledge that more complete recitations of the law relating to attempted felonious assault with a gun have been fashioned into jury instructions by other trial courts. However, we do not find the jury instructions at issue here were an incorrect statement of law or misleading—and they certainly did not materially affect the outcome of the case—given the evidence presented and considering the instructions as a whole. *See State v. Allen*, 73 Ohio St.3d 626, 629, 653 N.E.2d 675 (1995) (explaining that, although the Court expressed a preference that a certain instruction be avoided, giving the instruction did not constitute prejudicial error).

**{¶49}** Additionally, the jury instructions at issue were applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instructions, which the State had requested. *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, at ¶ 240 ("[r]equested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction"). As explained in the section above addressing the first and third assignments of error, not only did the State present evidence that Peters pointed a gun at Dallas (something Peters himself admits), but it presented evidence that Peters made verbal

threats to Dallas while doing so. (*See, e.g.,* Aug. 30, 2022 Tr. at 85-86 (McCune testifying that Peters put the gun to Dallas' head and screamed "I'll blow your head off"); *id.* at 102 (McCune testifying that Peters told Dallas, while holding a gun against her, "I'm going to blow your brains out")).

{¶50} Peters argues he only made one comment to the victim and that comment, alone, did not indicate an intention on his part to use the weapon. (Appellant's Brief at 10 ("[h]e merely said, 'you're not that big and bad now huh'")). But this argument, inexplicably, completely ignores McCune's testimony, which clearly supported that Peters' verbal threat indicated an intent to use the gun while pointed at the victim. The words "I'm going to blow your brains out" and "I'll blow your head off" each unquestionably evidence an intent to use the gun pointed at Dallas. The jury was free to believe or disbelieve whatever testimony it chose.

{¶51} Furthermore, even if the jury for some reason did not rely on McCune's testimony, then they could have relied on Dallas' testimony to reach the conclusion that Peters' verbal threat indicated an intent to use the gun while pointed at the victim. Peters ignores Dallas' testimony that she feared she was going to lose her life. Dallas testified that on one of the occasions, Peters, while holding the gun to her head, told her "you're not that big and bad now, huh." Caselaw shows this comment certainly could indicate an intention on Peters' part to use the gun as perceived by a reasonable person under the circumstances. *See, e.g., State v. Shepherd*, 8th Dist. Cuyahoga No. 102974, 2016-Ohio-1119, ¶ 12 (affirming jury's

conviction of the defendant for felonious assault where defendant pointed a gun at the victim and said "you know what this is"); *Simon*, 1998 WL 735868, at *4 (sufficient evidence to convict defendant of felonious assault where defendant pointed a gun at the victim and the threat made was "Get out of my house"); *Smiley*, 2012-Ohio-1742, at ¶ 29 (sufficient evidence to convict defendant of felonious assault where defendant pointed a gun at the victim's chest and the threat made was "don't move"). Peters' argument attempts to isolate the comment from its context, but the comment cannot be evaluated in isolation. The phrases "you know what this is" or "don't move" or "get out of my house"—or even the phrase used in *Green* ("If you don't have a warrant get the fuck out of my house")—do not, in and of themselves, evidence an intent to use a deadly weapon when simply read in isolation. Yet, when properly evaluated in context of the situation, such comments and the comment Dallas testified to here ("you're not that big and bad now, huh") can be perceived by a reasonable person under the circumstances as an intention to use a deadly weapon.

**{¶52}** Next, in his briefing, Peters contends there was nothing to prove Dallas *actually* felt threatened or was afraid. In support of this contention he cites Dallas' testimony that she "wasn't scared" and had told a detective she knew Peters was not going to shoot her. (Aug. 30, 2022 Tr. at 155-56). However, the State was not required to prove that the victim actually felt threatened or was afraid in order to prove the offense of felonious assault. Such a requirement does not correspond with

the elements of the offense or with the Ohio Supreme Court's pronouncements in *Green*—which focus on a reasonable person's perception of the statement made by the assailant. *See also State v. Kehoe*, 133 Ohio App.3d 591, 613-614, 729 N.E.2d 431 (12th Dist.1999) (the statement "a felonious assault occurs when a loaded weapon is pointed at an individual and the individual feels threatened * * * does not accurately reflect the elements of felonious assault"). Regardless, Dallas' testimony *does* support that she felt threatened and feared for her life. (*See, e.g.,* Aug. 30, 2022 Tr. at 140).

{¶53} Finally, even if the jury instructions at issue were erroneous, they were not prejudicial under the particular facts of this case given the evidence presented at trial and instructions as a whole. The trial court did not abuse its discretion. We find that any alleged error in the jury instructions did not materially affect the outcome of the case. *State v. Swartz*, 3d Dist. Auglaize No. 2-85-34, 1987 WL 32155, *3 (Dec. 30, 1987) (if the record shows the jury returned a guilty verdict on sufficient evidence, and no prejudicial error occurred at trial or in the instructions to the jury, then the reviewing court may not reverse the judgment of conviction).

{¶54} Peters' second assignment of error is overruled.

### C.    Fourth Assignment of Error

{¶55} In his fourth assignment of error, Peters argues that he was deprived of the Eighth Amendment's protections against cruel and unusual punishment when he was indicted for felonious assault and the associated firearm specification. Peters

maintains that possession of a firearm was, in this instance, an element of the felonious-assault offense with which he was charged. He argues that "[t]he ability of the State to add the gun specification penalty enhancement that is also an essential element of the predicate offense to an indictment creates a penalty that is grossly disproportionate to the offense in the event there is a finding of guilt." (Appellant's Brief at 15). He claims "it is unconstitutional to further increase a penalty for a crime that already accounts for a firearm by further indicting an individual with a gun specification," and he asks us to reverse his conviction for the firearm specification. (*Id.* at 17).

**{¶56}** However, as Peters concedes, this issue was not raised at any time in the trial court proceedings below. "'If a party fails to object to a constitutional issue at trial, an appellate court need not consider the objection for the first time on appeal.'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 70, quoting *State v. Rowland*, 3d Dist. Hancock No. 5-01-28, 2002 WL 479163, *1 (Mar. 29, 2002). While we retain discretion to consider constitutional challenges not previously submitted to the trial court, "discretion will not ordinarily be exercised to review such claims, where the right sought to be vindicated was in existence prior to or at the time of trial." *State v. Woodards*, 6 Ohio St.2d 14, 21, 215 N.E.2d 568 (1966).

**{¶57}** Here, Peters' Eighth-Amendment argument was available to him from the outset of his prosecution. Yet, he did nothing in the trial court to develop or

advance it. Under these circumstances, we decline to exercise our discretion to consider his constitutional argument in the first instance.

{¶58} Peters' fourth assignment of error is overruled.

### D.    Fifth Assignment of Error

{¶59} In his fifth assignment of error, Peters argues that his mandatory four-year minimum prison sentence for felonious assault is contrary to law. Peters acknowledges that the trial court had to impose a mandatory prison term for the firearm specification associated with his felonious-assault conviction, but he maintains that nothing in the Revised Code required the trial court to impose a mandatory prison term for the felonious-assault conviction itself. In making this argument, Peters asks us to reconsider our decision in *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, issued on January 18, 2022, as well as the interpretation of R.C. 2929.13(F)(8) we adopted therein.[3]

### i.    Standard of Review for Felony Sentencing

{¶60} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002,

---

[3] Although R.C. 2929.13 has since been amended (effective April 4, 2023), the version of the statute applicable both in *Wolfe* and in this case are the same and, more importantly going forward, the amendments do not alter our conclusion concerning the interpretation of R.C. 2929.13(F)(8). *See State v. Johnson*, 116 Ohio St.3d 541, 2008-Ohio-69, ¶ 9 (the applicable version of R.C. 2929.13(F) is the one in effect on the date of the offense).

¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

### ii. Relevant Sentencing Statutes

{¶61} We start with the definition of "mandatory prison term." As pertinent here, a "mandatory prison term" means "the term in prison that must be imposed for the offenses or circumstances set forth in divisions (F)(1) to (8) or (F)(12) to (21) of section 2929.13 and division (B) of section 2929.14 of the Revised Code." R.C. 2929.01(X)(1). Therefore, R.C. 2929.13(F)(8) provides for a mandatory prison term, as does R.C. 2929.14(B)(1)(a)(ii).

{¶62} Looking first to R.C. 2929.14(B)(1)(a), under R.C. 2929.14(B)(1)(a)(i)-(vi), "if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a [firearm specification] described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender [a prison term of six years, three years, one year, nine years, 54 months, or 18 months, as appropriate]." Under the version of the statute in effect at the time of Peters' offense,[4] a prison term imposed under R.C. 2929.14(B)(1)(a) "shall not be reduced pursuant to section 2967.19 [80% release procedure], section

---

[4] As with R.C. 2929.13, the legislature recently amended R.C. 2929.14 (effective April 4, 2023), but those amendments do not alter our conclusion concerning the interpretation of R.C. 2929.13(F)(8).

2929.20 [petitions for judicial release and early release], section 2967.193 [earned days of credit for participation in certain programs], or any other provision of Chapter 2967. [Pardon; Parole; Probation] or Chapter 5120. [Department of Rehabilitation and Correction] of the Revised Code." R.C. 2929.14(B)(1)(b). Because the jail-time credit provision in R.C. 2967.191 "plainly constitutes 'any other provision of Chapter 2967,'" R.C. 2929.14(B)(1)(b) clearly "requires that jail-time credit not be applied toward prison terms for firearm specifications." *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, ¶ 10, 15.

{¶63} Some criminal offenses are exempt from enhancement via firearm specification. Specifically, under R.C. 2929.14(B)(1)(e), "certain firearm offenses—carrying concealed weapons [R.C. 2923.12], illegal conveyance of deadly weapon or ordnance into a courthouse [R.C. 2923.123], improperly handling firearms in a motor vehicle [R.C. 2923.16], illegal possession of firearm in a liquor permit premises [R.C. 2923.121]—are not enhanceable." *State v. Jones*, 8th Dist. Cuyahoga No. 108050, 2019-Ohio-5237, ¶ 54. Additionally, where a violation of R.C. 2923.122 (conveyance or possession of deadly weapons or dangerous ordnance in school safety zone) "involves a deadly weapon that is a firearm other than a dangerous ordnance," the trial court is not permitted to impose a sentence for a firearm specification under R.C. 2929.14(B)(1)(a). R.C. 2929.14(B)(1)(e). Finally, R.C. 2929.14(B)(1)(e) further "provides that the offense of having a weapon while under a disability is [generally] not enhanceable with a sentence from a firearm

specification * * *." *State v. Gray*, 4th Dist. Washington No. 21CA6, 2022-Ohio-2940, ¶ 23. Here, Peters was convicted of felonious assault and a specification of the type described in R.C. 2941.145(A), and the exception provided in R.C. 2929.14(B)(1)(e) does not apply.[5] Thus, a mandatory three-year prison term for the use of a firearm in the commission of the felony applied, pursuant to R.C. 2929.14(B)(1)(a)(ii).

**{¶64}** Looking next to R.C. 2929.13(F), which currently includes 22 separate subdivisions, it "addresses mandatory prison terms and lists offenses for which a sentencing court is obligated to impose a prison term." *State v. Johnson*, 116 Ohio St.3d 541, 2008-Ohio-69, ¶ 9. The portion relevant here is:

> (F) Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under * * * section 2929.14 * * * of the Revised Code and except as specifically provided in section 2929.20 [petitions for judicial release and early release] * * * or section 2967.191 of the Revised Code [jail-time credit] * * * shall not reduce the term or terms pursuant to section 2929.20 [judicial release], * * * section 2967.193 [earned days of credit for participation in certain programs] * * *, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code for any of the following offenses:
>
> * * *
>
> (8) Any offense, other than a violation of section 2923.12 of the Revised Code [carrying concealed weapons], that is a felony, if the offender had a firearm on or about the offender's person or under the offender's control while committing the felony, with respect to a portion of the sentence imposed pursuant to division (B)(1)(a) of section 2929.14 of the Revised Code for having the firearm[.]

---

[5] R.C. 2941.145(B) also is not applicable to Peters because the trial court did not impose a mandatory prison term under R.C. 2929.14(B)(1)(a)(i), (iii), (iv), (v), or (vi).

R.C. 2929.13(F)(8). "Although R.C. 2929.13(F) generally prohibits the reduction of sentences imposed under that section[,] * * * it specifically allows for the reduction of sentences under R.C. 2967.191, which is the statute that controls '[c]redit for confinement awaiting trial and commitment.'" *State v. Culp*, 6th Dist. Lucas No. L-19-1281, 2020-Ohio-5287, ¶ 17.

### iii. *Wolfe* & Other Cases

{¶65} As indicated above, the crux of this assignment of error is the legal understanding of R.C. 2929.13(F)(8). This court was tasked with interpreting and applying R.C. 2929.13(F)(8) just last year in *Wolfe*. In *Wolfe*, the trial court imposed a mandatory six-year minimum prison sentence for aggravated robbery in addition to a mandatory three-year prison term for an associated firearm specification. *Wolfe*, 2022-Ohio-96, at ¶ 16. On appeal, the defendant argued that R.C. 2929.13(F)(8) "does not transfer the mandatory-ness of the gun specification to the underlying offense." *Id.* at ¶ 23. In rejecting the defendant's argument, we relied upon the Sixth District's opinion in *Culp*:

> Under R.C. 2929.13(F)(8), 'when a defendant is convicted of committing *any* felony (with the exception of carrying concealed weapons) while having or controlling a firearm, the court is required to impose a prison term—*not* community control sanctions—in addition to the mandatory prison term for [any] firearm specification * * *.' [*Culp* at ¶ 13]. 'A plea to or conviction of a firearm specification automatically meets the criteria in R.C. 2929.13(F)(8) that triggers a mandatory prison term for the underlying offense * * *.' *Culp* at ¶ 14[.]

(Emphasis sic.) *Id.* at ¶ 24 (additional citations omitted). Because the defendant in *Wolfe*, by pleading guilty to the firearm specification, "acknowledged that his accomplices brandished a firearm while committing the aggravated robbery," the trial court was required under R.C. 2929.13(F)(8) to impose a mandatory prison sentence for the aggravated robbery offense. *Id.* at ¶ 25.

{¶66} In addition to our court and the Sixth District, several other courts of appeals have concluded that R.C. 2929.13(F)(8) requires a prison term be imposed for felonies (other than carrying a concealed weapon) where the offender had a firearm on or about the offender's person or under the offender's control while committing the felony. *E.g., State v. Wofford*, 1st Dist. Hamilton No. C-180411, 2019-Ohio-2815, ¶ 8, 10; *State v. Shields*, 2d Dist. Montgomery No. 28573, 2020-Ohio-3204, ¶ 4-11; *State v. Christian*, 7th Dist. Mahoning No. 02 CA 170, 2005-Ohio-1440, ¶ 80; *State v. White*, 10th Dist. Franklin No. 10AP-34, 2011-Ohio-2364, ¶ 74. Furthermore, the Ohio Supreme Court has explained that "the mandatory-sentence provision of R.C. 2929.13(F) applies to a number of offenses, including * * * felonies committed while the offender had a firearm on or about the offender's person or control[.]" *Johnson*, 116 Ohio St.3d 541, 2008-Ohio-69, at ¶ 10.

{¶67} Until recently, the Eighth District appeared to be in agreement with this court and the others regarding the meaning of R.C. 2929.13(F)(8). *See State v. Galvan*, 8th Dist. Cuyahoga No. 108658, 2020-Ohio-1285, ¶ 20; *State v. Sharpley*, 8th Dist. Cuyahoga No. 106616, 2018-Ohio-4326, ¶ 17. But this recently changed

with the Eighth District's en banc decision in *State v. Logan*, 8th Dist. Cuyahoga

No. 111533, 2023-Ohio-3353.[6]

**{¶68}** In *Logan*, the defendant pleaded guilty to one count of attempted

having weapons while under disability, as well as an associated one-year firearm

specification. *Logan*, 2023-Ohio-3353, at ¶ 1. The trial court sentenced the

defendant to a mandatory one-year prison term for the firearm specification to be

served prior and consecutive to two years of community control for the underlying

felony. *Id.* The State appealed the sentence, arguing that the trial court was required

to impose a mandatory prison term on both the specification and the underlying

felony. *Id.* The Eighth District, sitting en banc, framed the question to be resolved:

> Does R.C. 2929.13(F)(8) require a mandatory prison term and
> preclude the imposition of community control sanctions on an
> underlying felony when a defendant is found guilty on a
> corresponding firearm specification?

*Id.* at ¶ 6. It answered the question in the negative. *Id.* at ¶ 8. The Eighth District

found "the language of R.C. 2929.13(F)(8) is plain and unambiguous" (*id.* at ¶ 25),

and it held: "[w]hen a trial court crafts a sentence for a felony that carries a firearm

specification, R.C. 2929.13(F)(8) requires the court to impose the definite prison

term prescribed by R.C. 2929.14(B)(1)(a) as a mandatory prison term with respect

to the specification; it does not also require the court to impose a mandatory prison

---

[6] The en banc decision followed an earlier decision in that case (issued on April 6, 2023), which had created a conflict within the Eighth District: *State v. Logan*, 8th Dist. No. 111533, 2023-Ohio-1135. Any other reference to *Logan* in this opinion is to the Eighth District's en banc decision.

term with respect to the underlying felony." *Id.* at ¶ 8. In its view, "R.C. 2929.13(F)(8) cannot be read in any other way than we do here" and, "[e]ven if there were some ambiguity, 'sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused.'" *Id.* at ¶ 28, quoting R.C. 2901.04(A).

**{¶69}** The State had argued in *Logan* that "R.C. 2929.13(F)(8) requires the imposition of a mandatory prison term on an underlying felony when the felony carries a corresponding firearm specification." *Id.* at ¶ 2. The defendant countered, saying the State's argument ignores the last phrase in the statute: "with respect to a portion of the sentence imposed pursuant to [R.C. 2929.14(B)(1)(a)] for having the firearm." *Id.* at ¶ 20. The Eighth District agreed with the defendant. *Id.* at ¶ 20. In its view, "[t]o read the statute in the way that the state suggests would be to read the last phrase out of the statute." *Id.* at ¶ 26. The court also said that "[t]he opinions rendered by other appellate districts that come to the state's preferred conclusion, in our view, similarly do not sufficiently consider the last phrase of the statute." *Id.* at ¶ 21. [7] Interestingly, the *Logan* decision does not mention the Supreme Court of Ohio's decision in *Johnson*.

---

[7] As of the date of publication of this opinion, the Eighth District certified a conflict between *Logan* and our decision in *Wolfe* (and other decisions), and the State filed a Notice of Certified Conflict with the Supreme Court of Ohio. Also, the concurring-in-judgment-only portion of the *Logan* decision indicated a conflict should be certified between *Logan* and one of the conflicting cases and "the Supreme Court of Ohio should take this issue to better address the relationship between mandatory prison terms on specifications and the underlying offenses in the context of the overriding principles of felony sentencing under R.C. 2929.11 and other relevant provisions in Title 29." *Logan*, 2023-Ohio-3353, ¶ 44 (S. Gallagher, J., concurring in judgment only). We fully agree with the portions of the concurring-in-judgment-only opinion from the *Logan* decision

**{¶70}** In addition to the Eighth District, the Fifth District has suggested in dicta that R.C. 2929.13(F)(8) does not mandate the imposition of a prison sentence for the felony enhanced by a firearm specification. *State v. Roush*, 5th Dist. Morrow No. 13CA0008, 2014-Ohio-4887, ¶ 35 ("R.C. 2929.13(F)(8) requires the firearm specification penalty be made mandatory, but not the penalty for the underlying offense").

### iv. When applicable, R.C. 2929.13(F)(8) requires the defendant to serve a mandatory prison term for the underlying felony, not just for an accompanying firearm specification

**{¶71}** The issue presented in Peters' fifth assignment of error—whether to reaffirm the interpretation of R.C. 2929.13(F)(8) we embraced in *Wolfe* or whether to repudiate this interpretation in favor of one like that adopted by the Eighth District in *Logan*—is ultimately one of statutory interpretation. "The primary goal of statutory interpretation is to discern the intent of the legislature." *State v. Anthony*, 96 Ohio St.3d 173, 2002-Ohio-4008, ¶ 10. "[W]hen analyzing an issue of statutory interpretation, 'the question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.'" *State v. Bollar*, 171 Ohio St.3d 678, 2022-Ohio-4370, ¶ 10, quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. Therefore, "[i]n determining intent, we

---

that said "[t]he provisions in [R.C. 2929.13] are a challenge to even the most experienced statute constructionist," "[t]he legislature has not provided the model of clarity for sentencing considerations," and "[i]t may well be time to revisit a thorough review and simplification of the bloated sentencing statutes." (*Id.* at ¶ 38 fn. 6, ¶ 43).

first look to the language of the statute." *Anthony* at ¶ 10. We "focus on everything within 'the four corners of the enactment' in order to 'determine the intent of the enacting body'"; we do not "'pick out one sentence and disassociate it from the context.'" *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 9, quoting *Black-Clawson Co. v. Evatt*, 139 Ohio St. 100, 104, 38 N.E.2d 403 (1941).

{¶72} "If the statute's language is plain and unambiguous, we apply it as written." *Bollar* at ¶ 10. "However, where the words are ambiguous and are subject to varying interpretations, further interpretation is necessary." *Anthony* at ¶ 10; *see also Jacobson* at ¶ 8 (if a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no reason for resorting to rules of statutory interpretation because an unambiguous statute is to be applied, not interpreted). Ambiguity "means that a statutory provision is 'capable of bearing more than one meaning.'" *Jacobson* at ¶ 8, quoting *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, ¶ 16.

{¶73} Therefore, we first must determine whether R.C. 2929.13(F)(8) is ambiguous. Again, the Eighth District found R.C. 2929.13(F)(8) to be plain and unambiguous and does not require the imposition of a mandatory prison term for the felony underlying a firearm specification. *Logan*, 2023-Ohio-3353, at ¶ 8, 25. However, after fully considering the issue, we respectfully disagree with the Eighth District—both as to its conclusion regarding R.C. 2929.13(F)(8)'s ambiguity and as to its conclusion about how R.C. 2929.13(F)(8) operates.

-44-

{¶74} Regarding ambiguity, in our view, R.C. 2929.13(F)(8) does not "convey[] a clear and definite meaning." *Jacobson* at ¶ 8. It is capable of bearing more than one meaning and, therefore, is ambiguous. *Id.* The provision can be read as meaning what the *Logan* court interpreted it to mean, emphasizing its last phrase and de-emphasizing the "for any of the following offenses" phrase in its first part. However, the provision can also be read as meaning a prison term is mandated for an underlying "offense * * * that is a felony," and the provision's last phrase (which follows a comma) modifies "the felony" to be limited to those felonies where "a portion" of the sentence will also be imposed pursuant to R.C. 2929.14(B)(1)(a). This second meaning corresponds with the conclusion reached in *Wolfe*, the Supreme Court of Ohio in *Johnson*, and numerous other courts that have interpreted the provision.

{¶75} Unlike the Eighth District in *Logan*, we do not find that R.C. 2929.13(F)(8)'s last phrase makes the statute unambiguous. Rather, we find that R.C. 2929.13(F)(8)'s last phrase, when viewed in context with the rest of R.C. 2929.13(F)(8) and the structure of R.C. 2929.13(F) as a whole, introduces doubt as to the meaning of R.C. 2929.13(F)(8) and subjects it to varying interpretations. *See also* Griffin & Katz, *Ohio Felony Sentencing Law*, Section 8:11, at 1149 (2007) ("[t]hat statutory language [in R.C. 2929.13(F)(8)] leaves unclear whether an offender who possesses a firearm in committing a felony must be imprisoned for the underlying felony as well as the term of imprisonment prescribed by RC

2929.14(D)(1)(a) [now R.C. 2929.14(B)(1)(a)] for possessing or using the firearm").[8] In short, we find the language is ambiguous.

{¶76} To us, it is meaningful that R.C. 2929.13(F) uses the phrase "for any of the following offenses," rather than "for any of the following offenses or specifications," when it introduces its list of "offenses" for which "the court shall impose a prison term or terms." R.C. 2929.13(F). We note the legislature specifically repeated the term "offense" in R.C. 2929.13(F)(8). The various subdivisions in R.C. 2929.13(F)(1)-(22) list offenses, or some combination of offense and aggravating circumstances, rather than specifications. It is reasonable to believe that, had the General Assembly meant for R.C. 2929.13(F)(8) to refer only to the sentence imposed for a firearm specification (as *Logan* held), it would have used language more specifically referring to specifications. After all, the General Assembly knows how to refer clearly to firearm specifications when it wishes to do so. *See, e.g.*, R.C. 2929.14(B)(1)(a) (outlining sentences for "specification[s] of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code").

{¶77} We are not convinced by the Eighth District's assertion in *Logan* that "[t]he statutory reference to 'offenses,' as opposed to 'specifications,' is logical" and results in a plain and unambiguous statute. *Logan*, 2023-Ohio-3353, at ¶ 26.

---

[8] Since 2007, the only changes to R.C. 2929.13(F)(8) or the introductory portion of R.C. 2929.13(F) have been renumbering or minor additions immaterial to this issue.

As the *Logan* opinion later recognizes in its portion reissuing the decision of the merit panel, a firearm specification is *not* a criminal offense. *Id*. at ¶ 57. They are different things under the Revised Code. *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, ¶ 17 ("the firearm specification is merely a sentence enhancement, not a separate criminal offense"); R.C. 2901.03(A) ("[n]o conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code"). Separate findings of guilt are required for a specification and its underlying offense. *See* R.C. 2929.14(B)(1)(a) (applying "if an offender * * * is convicted of or pleads guilty to a felony [and] also is convicted of or pleads guilty to a specification * * *"). Furthermore, in certain circumstances, a specification can have some legal effect independent of its underlying felony. *See Bollar*, 171 Ohio St.3d 678, 2022-Ohio-4370, at ¶ 1, 19, 25 (concluding that, under R.C. 2929.14(B)(1)(g), a defendant can be sentenced for a firearm specification even when the offense underlying the specification has merged with another offense for purposes of sentencing).

{¶78} For these same reasons, we also respectfully disagree with the dissent because it likewise says it finds R.C. 2929.13(F)(8) to be plain and unambiguous. We also point out that, despite "find[ing] no ambiguity in R.C. 2929.13(F)(8)," the dissent then impermissibly looks to other statutes for support. The Supreme Court has explained: "[w]e seek legislative intent first in the statutory language" and, "[i]f the statutory language is clear and unambiguous, we apply it as written, giving effect to its plain meaning." *State v. Bryant*, 160 Ohio St.3d 113, 2020-Ohio-1041, ¶ 12.

This should end the dissent's analysis as it did for the *Logan* court. "Further interpretation is necessary only when the statutory language is ambiguous and subject to varying interpretations." *Id.* at ¶ 12, 25-26 (after finding a term in a statute to be *ambiguous*, applying a statutory construction rule to consider other statutes relating to the same general subject matter); *see also State v. Arnold*, 61 Ohio St.3d 175, 178, 573 N.E.2d 1079 (1991) ("[w]hile we are required to strictly construe statutes defining criminal penalties against the state, see R.C. 2901.04(A), this 'rule of lenity' applies only where there is ambiguity in or conflict between the statutes").

**{¶79}** Next, because we find R.C. 2929.13(F)(8) to be ambiguous, we look to R.C. 1.49, which "sets forth certain criteria that serve as guideposts for courts to follow when determining the legislative intent of an ambiguous statute." *Anthony*, 96 Ohio St.3d 173, 2002-Ohio-4008, at ¶ 12. That statute tells us:

> If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:
>
> (A) The object sought to be attained;
>
> (B) The circumstances under which the statute was enacted;
>
> (C) The legislative history;
>
> (D) The common law or former statutory provisions, including laws upon the same or similar subjects;
>
> (E) The consequences of a particular construction;
>
> (F) The administrative construction of the statute.

R.C. 1.49. After such consideration, we confirm our interpretation of R.C. 2929.13(F)(8) in *Wolfe* and hold that R.C. 2929.13(F)(8) requires the imposition of

-48-

a mandatory prison term for any felony (other than carrying concealed weapons) where the offender had or controlled a firearm when committing that offense. Notably, the Eighth District in *Logan* did not consider the R.C. 1.49 matters because it had found the statutory provision to be "plain and unambiguous." *Logan*, 2023-Ohio-3353, at ¶ 25; *see also Jacobson*, 149 Ohio St.3d 398, 2016-Ohio-8434, at ¶ 8 (without an initial finding of ambiguity, inquiry into the R.C. 1.49 matters is inappropriate).

**{¶80}** First, considerations of former law and legislative history support our *Wolfe* interpretation, not the *Logan* interpretation. R.C. 2929.13(F)(8) (then codified as R.C. 2929.13(F)(6)) first came into being in 1996, a combined product of 1995 Am.Sub.S.B. 2 and 1996 Am.Sub.S.B. 269. Although it has since been amended and reordered, R.C. 2929.13(F)(8) exists in substantially identical form as it did in 1996. Prior to its enactment, a defendant convicted of a felony and a firearm specification was subject to mandatory incarceration for the firearm specification and was also conclusively ineligible for probation under former R.C. 2951.02. *State v. Knox*, 10th Dist. Franklin No. 89AP-1168, 1991 WL 115820, *3 (June 11, 1991). Moreover, other than carrying concealed weapons, any felony offense where the offender was armed with a firearm was non-probationable, even in the absence of a firearm specification or if the offender was found not guilty of the firearm specification. *Id.*; *State v. Ervin*, 93 Ohio App.3d 178, 180, 638 N.E.2d 104 (8th Dist.1994); *see also* Griffin & Katz, *Ohio Felony Sentencing Law*, Section 8:11, at

-49-

1149 (2007) ("[u]nder prior law, no question existed that the prison term was mandatory for the underlying felony and the possession of the firearm"). Members of the Ohio Sentencing Commission, which recommended the changes to the law that ultimately took the form of 1995 Am.Sub.S.B. 2 and 1996 Am.Sub.S.B. 269, expected this general scheme would continue with what is now R.C. 2929.13(F)(8). *See* Griffin & Katz, *Ohio Felony Sentencing Law*, Section 8:11, at 1149 (2007) ("in the minds of Sentencing Commission staff representatives who helped draft the amendatory language to RC 2929.13(F)(8) in 1996 * * * [the] expectation was that the offender would be sentenced to prison for both the firearm penalty and the underlying crime"). Thus, the Commission anticipated an offender would be sentenced to mandatory prison time on a firearm specification and also to prison time for the underlying felony. *Id.*

{¶81} Furthermore, when the language in R.C. 2929.13(F)(8) (then R.C. 2929.13(F)(6)) went into effect in 1996, language in R.C. 2929.14—i.e., the companion statute—clearly indicated a court would impose a prison term on the offender for the underlying felony and a separate prison term for the firearm specification. 1996 Am.Sub.S.B. 269 ("if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in [R.C. 2941.144, 2941.145, or 2941.141] * * *, the court, after imposing a prison term on the offender for the felony under division (A), (D)(2), or (D)(3) of this section, shall impose an additional prison term, determined pursuant to this

division, that shall not be reduced pursuant to section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code"); *Kehoe*, 133 Ohio App.3d at 616, 729 N.E.2d 431 (quoting former version of R.C. 2929.14(D)(1)(a)(i)). This is significant because, again, the language in R.C. 2929.13(F)(8) exists in substantially identical form today as it did in 1996. Thus, despite later choosing to drop that additional clarifying language in R.C. 2929.14, the legislature did not attempt to further harmonize the two statutes.

{¶82} Second, regarding the consequences of a particular construction (R.C. 1.49(E)), the *Wolfe* interpretation avoids some redundancies in the overall statutory scheme relating to firearm specifications that are a consequence of the *Logan* interpretation. For example, R.C. 2929.14(B)(1)(a) directs that the trial court "shall impose on the offender * * * [a] prison term[]" for a firearm specification; R.C. 2929.14(B)(1)(a)(i)-(vi) sets forth the lengths of the available prison terms associated with firearm specifications; and R.C. 2929.14(B)(1)(b) makes such terms mandatory, i.e., not subject to reduction under R.C. 2929.20, or any other provision of R.C. Chapter 2967. or Chapter 5120. Thus, the combination of R.C. 2929.14(B)(1)(a) and (b) is sufficient, by itself, to effectuate the General Assembly's intent that offenders serve a mandatory prison term for firearm specifications. (The same was true under the former version that went into effect in 1996, referenced above.) With the *Logan* interpretation, R.C. 2929.13(F)(8) seemingly would not do anything that R.C. 2929.14(B)(1)(a) and (b) do not already

do. In other words, it would be redundant. Further highlighting such duplicity is that R.C. 2929.01(X)(1) identifies sentences imposed under R.C. 2929.14(B)(1)(a) and R.C. 2929.13(F)(8) as each setting forth a "mandatory prison term." Thus, under the *Logan* interpretation, R.C. 2929.01(X)(1)'s definition of "mandatory prison term" would apply twice to the same specification. These inefficiencies disappear if R.C. 2929.14(B) is understood as making the specification time mandatory and R.C. 2929.13(F)(8) is understood as making the sentence for the underlying felony mandatory.

{¶83} Third, another consequence of the *Logan* interpretation of R.C. 2929.13(F)(8) is a conflict between R.C. 2929.13(F)(8) and 2929.14(B)(1)(b) concerning jail-time credit. Again, R.C. 2929.13(F) states that sentences imposed under that statute are eligible for reduction under the jail-time credit statute, R.C. 2967.191. In contrast, sentences imposed for firearm specifications under R.C. 2929.14(B)(1)(a) are plainly ineligible for jail-time credit. R.C. 2929.14(B)(1)(b); *Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, at ¶ 10, 15. Thus, if R.C. 2929.13(F)(8) is understood as applying only to the sentence for a firearm specification, then R.C. 2929.13(F) would seemingly require that jail-time credit be applied to that term while R.C. 2929.14(B)(1)(b) would expressly forbid it. This problem does not exist under the *Wolfe* interpretation of R.C. 2929.13(F)(8). Under *Wolfe*, the prison term for the firearm specification is, in accordance with R.C. 2929.14(B)(1)(b), not subject to a reduction for jail-time credit, but the prison term

imposed for the underlying felony is, per the terms of R.C. 2929.13(F), eligible for reduction under R.C. 2967.191.

**{¶84}** Fourth, yet another consequence of the *Logan* interpretation of R.C. 2929.13(F)(8) is an issue of underinclusivity. Following the *Logan* interpretation, the trial court must impose the prison term required by R.C. 2929.13(F)(8) for firearm specifications attending all felonies except carrying concealed weapons. However, R.C. 2929.14(B)(1)(e) exempts far more firearm crimes from enhancement with a firearm specification than just carrying concealed weapons (e.g., improperly handling firearms in a motor vehicle, illegal possession of firearm in a liquor permit premises, and many instances of having weapons while under disability). This is not an issue under the *Wolfe* interpretation of R.C. 2929.13(F)(8). Applying *Wolfe*, a trial court is not required by R.C. 2929.13(F)(8) to impose a prison term for the underlying offense of carrying concealed weapons, and, pursuant to R.C. 2929.14(B)(1)(e), no prison term can be imposed for any firearm specification associated with a felony violation of the carrying-concealed-weapons statute. Thus, for this one crime, no mandatory prison time is required at all. But with respect to all other felonies where a firearm was possessed or controlled by the offender, a mandatory prison term must be imposed under R.C. 2929.13(F)(8) even if R.C. 2929.14(B)(1)(e) simultaneously prohibits enhancing the sentence with a firearm specification. Accordingly, the *Wolfe* interpretation of R.C. 2929.13(F)(8)

harmonizes the statute with R.C. 2929.14(B)(1)(e) in a way the *Logan* interpretation does not.

**{¶85}** In sum, we find that R.C. 2929.13(F)(8) is ambiguous, extratextual considerations help to resolve the ambiguity, and those considerations militate in favor of our *Wolfe* interpretation of R.C. 2929.13(F)(8) instead of the *Logan* interpretation. Therefore, we reaffirm our interpretation of R.C. 2929.13(F)(8) set forth in *Wolfe* and conclude that R.C. 2929.13(F)(8) obligates the trial court to impose a mandatory prison term for any felony (except carrying concealed weapons) where the offender had or controlled a firearm when committing that offense. The mandatory sentence required by R.C. 2929.13(F)(8) is for the underlying felony and not for any firearm specification that might be attached to the offense.[9]

### v. Peters' sentence is not contrary to law

**{¶86}** In this case, Peters was convicted of felonious assault as well as an accompanying firearm specification. By being found guilty of the firearm specification, Peters was found to have possessed or controlled a firearm while committing the felonious assault. At sentencing, the trial court applied R.C. 2929.13(F)(8) consistent with our decision in *Wolfe* and sentenced Peters to a

---

[9] Even considering the 'rule of lenity' and phrasing in R.C. 2929.14(C)(1)(a) and R.C. 2903.11(D) referenced in the dissent, we still reaffirm our interpretation of R.C. 2929.13(F)(8). Reasonable minds are in disagreement on this issue and, therefore, it is one that may best be clarified by the Supreme Court or the legislature rather than an intermediate appellate court defaulting to a principle of statutory construction (i.e. R.C. 2901.04(A)).

mandatory minimum term of four years in prison for felonious assault. Having reaffirmed the *Wolfe* interpretation of R.C. 2929.13(F)(8), we conclude that the trial court was correct to sentence Peters to a mandatory minimum term of incarceration and that Peters' sentence for felonious assault is not contrary to law.

{¶87} While we overrule Peters' fifth assignment of error, we would look favorably on a properly drafted and filed motion to certify a conflict to the Supreme Court of Ohio.

## IV. CONCLUSION

{¶88} For the foregoing reasons, Peters' assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Union County Court of Common Pleas.

*Judgment Affirmed*

**ZIMMERMAN, J., concurs.**

**WALDICK, J., concurs in part and dissents in part.**

{¶89} I concur with the majority regarding its analysis and conclusions as to the first, second, third, and fourth assignments of error. However, I respectfully dissent from the majority's assessment of the fifth assignment of error, for the reasons that follow.

{¶90} In overruling Peters' fifth assignment of error, the majority holds that R.C. 2929.13(F)(8) requires the trial court to impose a mandatory prison term on Peters' underlying felonious assault conviction, in addition to imposing a mandatory

prison term for the firearm specification. In my opinion the majority's holding here is in direct contradiction to the plain language of the statutory subsection at issue, which requires the imposition of a mandatory prison term only with respect to the portion of the sentence imposed for the firearm specification.

{¶91} When sentencing an offender for a felony offense with a firearm specification, a trial court must impose a mandatory prison term for the specification, which must run consecutive to, and be served prior to, the sentence for the underlying felony. *See* R.C. 2929.14(B)(1)(a) and (C)(1)(a). However, the issue before us is whether prison time imposed for the underlying felony must be a "mandatory prison term" when that felony by itself does not carry mandatory time.

{¶92} "Mandatory prison term" is defined in R.C. 2929.01, which provides in relevant part:

> (X) "Mandatory prison term" means any of the following:
>
> (1) Subject to division (X)(2) of this section, the term in prison that must be imposed for the offenses or circumstances set forth in divisions (F)(1) to (8) or (F)(12) to (21) of section 2929.13 and division (B) of section 2929.14 of the Revised Code. Except as provided in sections 2925.02, 2925.03, 2925.04, 2925.05, and 2925.11 of the Revised Code, unless the maximum or another specific term is required under section 2929.14 or 2929.142 of the Revised Code, a mandatory prison term described in this division may be any prison term authorized for the level of offense except that if the offense is a felony of the first or second degree committed on or after March 22, 2019, a mandatory prison term described in this division may be one of the terms prescribed in division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code, whichever is applicable, that is authorized as the minimum term for the offense.

**{¶93}** R.C. 2929.13(F), referenced in the definition of "mandatory prison term" in R.C. 2929.01(X)(1), sets forth a number of offenses and/or specific situations involving certain offenses, where a trial court must impose a mandatory prison term.

**{¶94}** At issue here is R.C. 2929.13(F)(8), which reads:

(F) Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under sections 2929.02 to 2929.06, section 2929.14, section 2929.142, or section 2971.03 of the Revised Code and except as specifically provided in section 2929.20, or section 2967.191 of the Revised Code or when parole is authorized for the offense under section 2967.13 of the Revised Code shall not reduce the term or terms pursuant to section 2929.20, division (A)(2) or (3) of section 2967.193 or 2967.194, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code for any of the following offenses:

* * *

(8) Any offense, other than a violation of section 2923.12 of the Revised Code, that is a felony, if the offender had a firearm on or about the offender's person or under the offender's control while committing the felony, *with respect to a portion of the sentence imposed pursuant to division (B)(1)(a) of section 2929.14 of the Revised Code for having the firearm*[.]

(Emphasis added.)[10]

**{¶95}** In construing statutes, we must read words and phrases in context and construe them in accordance with rules of grammar and common usage. *State ex rel.*

---

[10] It bears noting that upon reading R.C. 2929.01(X) together with the R.C. 2929.13(F), a "mandatory prison term" pursuant to Ohio's statutory framework refers not only to the fact that prison must be imposed by a trial court for the offenses or under the circumstances set forth in R.C. 2929.13(F). A "mandatory prison term" also carries additional ramifications regarding an offender's prison time, specifically being that the offender is not eligible for judicial release pursuant to R.C. 2929.20, nor eligible for certain "good time" credit pursuant to R.C. 2967.193 or R.C. 2967.194.

*Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, ¶ 11. Further, it is the duty of this Court "to give effect to the words used in a statute, not to insert words not used." *State v. S.R.,* 63 Ohio St.3d 590, 595, 589 N.E.2d 1319 (1992), citing *Cleveland Elec. Illum. Co. v. City of Cleveland,* 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus. "When interpreting a statute, we first look to the plain language of the statute and apply it as written when its meaning is clear and unambiguous." *Cheap Escape Co., Inc. v. Haddox, L.L.C.,* 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 9.

**{¶96}** In the instant case, the majority interprets the language of R.C. 2929.13(F)(8) to require a mandatory prison term for both the firearm specification and the underlying felony, but, in my opinion, that is not what the statutory language says in plain terms. *If* the language of R.C. 2929.13(F)(8) read "[a]ny offense, other than a violation of section 2923.12 of the Revised Code, that is a felony, if the offender had a firearm on or about the offender's person or under the offender's control while committing the felony" (i.e. if the last phrase of the subsection were omitted), then – in the absence of conflicting language elsewhere in the Ohio Revised Code – I would agree with the majority's interpretation. However, that is not how R.C. 2929.13(F)(8) reads, and I believe the majority opinion here serves to ignore the final, and operative, phrase of R.C. 2929.13(F)(8). As the Eighth District Court of Appeals, sitting en banc, pointed out in *State v. Logan*, 8th Dist. Cuyahoga No. 111533, 2023 Ohio 3353, to read the statute in the way suggested by the state

-58-

in that case, and the majority here, "would be to read the last phrase out of the statute." *Logan*, at ¶ 26.

**{¶97}** Unlike the majority, I find no ambiguity in R.C. 2929.13(F)(8). However, even if the statute were ambiguous, the rule of lenity would require this Court to sustain the fifth assignment of error in this case. "The rule of lenity is codified in R.C. 2901.04 and states that 'sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused.'" *State v. Pittman*, 3d Dist. Marion No. 9-13-64, 2014-Ohio-5001, ¶ 23. "[T]he 'touchstone' of the rule of lenity 'is statutory ambiguity.'" *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), quoting *Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). The Supreme Court of the United States "has made it clear that this principle of statutory construction applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco*, at 387, citing *United States v. Batchelder*, 442 U.S. 114, 121, 99 S.Ct. 2198, 2202, 60 L.Ed.2d 755 (1979); *Simpson v. United States*, 435 U.S. 6, 14–15, 98 S.Ct. 909, 913–914, 55 L.Ed.2d 70 (1978).

**{¶98}** I believe that my reading of R.C. 2929.13(F)(8) is also supported by the language of R.C. 2929.14(C). R.C. 2929.14(C)(1)(a) is the statutory subsection in which the legislature has provided that any mandatory prison term for a firearm

specification must be served first, and consecutively to, the sentence for the underlying felony. In so providing, R.C. 2929.14(C)(1)(a) is phrased as follows:

> Subject to division (C)(1)(b) of this section, *if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony*, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, *the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section*, **consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code**, *and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.*

(Emphasis added.) The language of R.C. 2929.14(C)(1)(a) distinguishes between a "mandatory prison term" imposed for a firearm specification and a "prison term" imposed for the underlying felony offense. The omission of the word "mandatory" in describing the "prison term" to be imposed "for the underlying felony," contrasted with the use of the phrase "mandatory prison term" in describing the sentence to be imposed for a firearm specification, is a strong indication that the legislature did not intend that R.C. 2929.13(F)(8) be interpreted as the majority does here.

{¶99} In this matter Peters was found guilty of felonious assault in violation of R.C. 2903.11(A)(2). R.C. 2903.11(D) provides that an offender convicted of

felonious assault in violation of R.C. 2903.11, without certain additional circumstances having been alleged and proven, is guilty of a felony of the second degree.[11]  For a felony of the second degree, pursuant to R.C. 2929.13(D)(1), "it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing * * * ."  Without more, and because felonious assault in violation of R.C. 2903.11(A) is not on the list of offenses specified in R.C. 2929.13(F) as requiring a mandatory prison term, Peters' underlying conviction for felonious assault was not an offense for which a mandatory prison term was authorized.

{¶100} As noted at the beginning of this dissent, the issue of whether, because of the accompanying firearm specification, the trial court was required to impose prison time for the underlying felonious assault is not before this Court.  The issue raised in the fifth assignment of error is whether the prison time imposed for the felonious assault was required by law to be a "mandatory prison term."

{¶101} For the reasons set forth in this dissent, I would find that the trial court was not required and not authorized, by the Ohio Revised Code to order that the prison time for the felonious assault itself be a mandatory prison term.  The fifth

---

[11] Notably, R.C. 2903.11(D) sets forth a number of different circumstances, including several involving certain statutory specifications, where an offender who has committed felonious assault must be sentenced to a mandatory prison term for the felonious assault.  However, being convicted of a firearm specification in addition to the felonious assault is *not* one of the circumstances set forth in R.C. 2903.11(D) that requires mandatory time be imposed for the felonious assault offense.

assignment of error should be sustained, the sentence reversed, and the matter remanded for resentencing.

**/hls**